84

THE STATE OF OHIO, APPELLEE, *v.* WAC, APPELLANT.

(No. 80-1590—Decided December 2, 1981.)

*Mr. Michael J. Bumb,* for appellee.
*Messrs. Hayward, Cooper, Straub, Walinski & Cramer* and *Mr. John Czarnecki,* for appellant.

LOCHER, J.   This cause presents four issues: (1) whether a finding of a culpable mental state is a necessary prerequisite to a conviction for bookmaking and operating a gambling house; (2) whether appellant's arrest was illegal and tainted the fruit of the attendant search; (3) whether the failure of law enforcement officers to "knock and announce" before entering the building was an unlawful search and seizure as to appellant; and (4) whether bookmaking is a "scheme or game of chance" as defined in R. C. 2915.01(E).

### I.

Appellant argues that the trial court erred by denying his request for an instruction which would have required that the jury find appellant to be reckless in order to convict him of

either of the crimes charged in the indictment.[1] The basis for appellant's position is R. C. 2901.21, which provides, in pertinent part:

"(B) When the section defining an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in such section, then culpability is not required for a person to be guilty of the offense. When the section neither specifies culpability nor plainly indicates a purpose to impose strict liability, recklessness is sufficient culpability to commit the offense.

"(C) As used in this section:
"* * *

"(3) 'Culpability' means purpose, knowledge, recklessness, or negligence, as defined in section 2901.22 of the Revised Code."

Appellant argues, therefore, that recklessness is an element of both bookmaking and operating a gambling house, because neither R. C. 2915.02(A)(1) nor 2915.03(A)(1) specifies a culpable mental state. We disagree.

## I A.

R. C. 2915.02 provides, in pertinent part:

"(A) No person shall:

"(1) Engage in bookmaking, or *knowingly* engage in conduct that facilitates bookmaking." (Emphasis added.)

The General Assembly included the culpable mental state of "knowingly" as an element of *facilitating* bookmaking. Nevertheless, there is no such requirement in the same subsection for bookmaking *per se*. This exclusion "plainly indicates a purpose to impose strict criminal liability * * * ." R. C. 2901.21(B).

## I B.

R. C. 2915.03 provides, in pertinent part:

"(A) No person, being the owner or lessee, or having custody, control, or supervision of premises, shall:

---

[1] Appellee does not dispute that appellant requested this instruction and that the court denied his request, although this scenario does not expressly appear in the record.

"(1) Use or occupy such premises for gambling in violation of section 2915.02 of the Revised Code;

"(2) *Recklessly* permit such premises to be used or occupied for gambling in violation of section 2915.02 of the Revised Code." (Emphasis added.)

The General Assembly included recklessness as an element of permitting gambling on one's premises in subsection (2). Subsection (1), however, does not contain a comparable standard. This exclusion "plainly indicates a purpose to impose strict criminal liability * * *." R. C. 2901.21(B).

Accordingly, the trial court correctly refused appellant's request for an instruction regarding recklessness.

## II.

Appellant argues that his arrest was illegal. He indicates that the arresting officers acted without an arrest warrant, without observing him commit the crimes charged in the indictment and outside their jurisdiction.[2] For these reasons, he maintains that the trial court should have suppressed the evidence seized under the search warrant. This argument fails, however, because R. C. 2935.04, the felony arrest statute, controls.

R. C. 2935.04 provides:

"When a felony has been committed, or there is reasonable ground to believe that a felony has been committed, any person without a warrant may arrest another whom he has reasonable cause to believe is guilty of the offense, and detain him until a warrant can be obtained."

Appellant had been convicted previously of a gambling offense under R. C. Chapter 2915. R. C. 2915.02(F) and 2915.03(B) define bookmaking and operating a gambling house, respectively, as felonies for anyone who has a prior gambling conviction. This fact was recited in the affidavit which was before the court which issued the search warrant. Constitutional analysis requires that the circumstances at the time of the arrest control. *Worthington* v. *United States* (C.A.

---

[2] Appellant also contends that R. C. 2945.75(A)(1) requires that his felony convictions be reduced to misdemeanors, because the complaint charged misdemeanors. The indictment charged felonies, however. Appellant clearly received notice of all the elements of each of the crimes charged as required by Crim. R. 33(E)(1). Accordingly, any flaw in the complaint against appellant would be harmless error.

6, 1948), 166 F. 2d 557, 562. Hindsight alone neither vindicates nor vitiates the actions of arresting officers. Rather, the record clearly indicates that these officers were aware, at the time of the arrest, that appellant had been convicted of a gambling offense. This fact, in conjunction with their previous investigation, provided them with probable cause that appellant was a felon. See *United States* v. *Watson* (1976), 423 U. S. 411 (rehearing denied, 424 U. S. 979). Likewise, the arresting officers had a "reasonable ground to believe that a felony ha[d] been committed * * * ." R. C. 2935.04. A warrantless arrest was, therefore, permissible both constitutionally and under the felony arrest statute.[3]

### III.

Appellant argues that the failure of law enforcement officers to "knock and announce" in accordance with R. C. 2935.12 prior to entry of the premises violated his right to be secure against unreasonable searches and seizures. We disagree.

The Court of Appeals, citing *Alderman* v. *United States* (1969), 394 U. S. 165 (rehearing denied, 394 U. S. 939), held that appellant did not have standing to assert any violation, because appellant's Fourth Amendment rights are personal. The *Alderman* court observed: " * * * The established principle is that suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence. Coconspirators and codefendants have been accorded no special standing." 394 U. S., at 171-172.

Accordingly, appellant's argument that the violation of Eidson's rights is also a violation of his own rights fails. The police identified themselves and properly arrested appellant. After securing the keys to the premises, the officers entered. The "knock and announce" statute permits an officer to gain forcible entry to a building "if, after notice of his intention to make such arrest or such search, he is refused admit-

---

[3] This provision also permits a warrantless felony arrest by *any person* with a "reasonable ground." Appellant's argument that the Toledo police officers were acting outside their jurisdiction is, therefore, moot.

tance\*\*\*." R. C. 2935.12. The facts of this case, however, present clearly different circumstances.

Accordingly, the failure of the officers to "knock and announce" before entering did not violate appellant's Fourth Amendment rights.

### IV.

Before trial, appellant requested a bill of particulars. The prosecution replied that, as to count II of the indictment (operating a gambling house, R. C. 2915.03[A][1]), appellant was involved in "establishing, promoting, or operating or knowingly engaging in conduct which facilitates any scheme or game of chance conducted for profit contrary to and in violation of Section 2915.02(A)(2) of the Revised Code * * *." Appellant argues that the prosecution merely proved bookmaking, not a "scheme or game of chance."

R. C. 2915.01 defines these terms as follows:

"As used in sections 2915.01 to 2915.12 of the Revised Code:

" * * *

"(C) 'Scheme of chance' means a lottery, numbers game, pool, or other scheme in which a participant gives a valuable consideration for a chance to win a prize.

"(D) 'Game of chance' means poker, craps, roulette, a slot machine, a punch board, or other game in which a player gives anything of value in the hope of gain, the outcome of which is determined largely or wholly by chance."

The Committee Comment to this section cites *Westerhaus Co.* v. *Cincinnati* (1956), 165 Ohio St. 327, as one of the sources in the case law for these statutory definitions. Paragraph 11 of the syllabus in *Westerhaus* states:

"The element of chance which is necessary in order to have gambling can be supplied by having the happening of some future event determine who gets a prize or how much he gets, at least where such event is not certain to happen and even though the happening of such event is dependent predominately upon skill."

These authorities buttress the holding of the Court of Appeals that the record contains sufficient evidence for a jury to find that appellant established, promoted or knowingly en-

gaged in conduct facilitating some "scheme or game of chance," as specified in the bill of particulars. This finding is consistent with appellant's conviction for operating a gambling house.[4]

Accordingly, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

CELEBREZZE, C. J., W. BROWN, SWEENEY, HOLMES, C. BROWN and KRUPANSKY, JJ., concur.

---

[4] As discussed above, "bookmaking" is a crime of strict liability under R. C. 2915.02. The jury's finding that appellant was guilty of "bookmaking," therefore, satisfies the "gambling" element of R. C. 2915.03(A)(1). Accordingly, if the prosecution had failed to prove a scheme or game of chance, any failure to prove the specifics in the bill of particulars would not have prejudiced appellant. Cf. *State* v. *Petro* (1947), 148 Ohio St. 473, paragraph three of the syllabus.