[This decision has been published in *Ohio Official Reports* at 95 Ohio St.3d 254.]

THE STATE OF OHIO, APPELLANT, *v*. MAXWELL, APPELLEE.

[Cite as *State v. Maxwell*, 2002-Ohio-2121.]

*Criminal law—Sex offenses—Pandering obscenity involving a minor—Proper reading of R.C. 2907.321(A)(6) demonstrates the clear intent of the General Assembly to impose strict liability on the act of bringing child pornography into the state—R.C. 2907.321, construed and applied.*

(No. 2000-1812—Submitted October 30, 2001—Decided May 15, 2002.)

APPEAL from the Court of Appeals for Franklin County, No. 99AP-1177.

_____

MOYER, C.J.

{¶1} Responding to information regarding a thirteen-year-old girl named Sarah, officers of the Worthington Police Department on August 20, 1998, learned that appellee Mark W. Maxwell had contacted Sarah via the Internet and that she had agreed to meet him at a store in Worthington that afternoon. Sarah disclosed to the police officers that she and appellee, who had identified himself as a nineteen-year-old male, had discussed meeting for the express purpose of engaging in sexual relations. Appellee was actually twenty-seven. Sarah agreed to meet appellee while wearing a wire so that the police could tape-record her conversation with appellee. During their conversation, Sarah brought up their prior discussions concerning going to a hotel room, but appellee did not say anything of a sexual nature. Pursuant to the police officer's instructions, Sarah allowed appellee to leave their meeting before she did. When appellee exited the store, he was immediately arrested.

{¶2} Following his arrest, the police obtained a search warrant for appellee's car and his apartment in Oxford, Ohio. In his car, the police found information relating to their meeting in Worthington. The police seized appellee's computer from his apartment. Numerous pictures and movies were discovered on

appellee's computer hard drive, including images of minors engaged in various sexual acts, including fellatio and sexual intercourse.

{¶3} Evidence at trial established that appellee had obtained these files by downloading them via America Online, an Internet service provider. All America Online electronic traffic passes through the company servers in Virginia. Therefore, when appellee downloaded a file via America Online to his computer in Ohio, the file electronically passed through Virginia and into Ohio.

{¶4} Also introduced into evidence were copies of E-mail transmissions and instant messages ("IMs") between appellee and Sarah. The IMs between appellee and Sarah are sexual in nature and include discussions about Sarah's experience with and willingness to perform fellatio, appellee's offer to give Sarah a "tip" of one hundred dollars for the act, and appellee's attempts to send Sarah a picture of himself naked in a state of sexual excitement. In addition, appellee told Sarah that he was only nineteen years old, while she told him that she was only thirteen years old.

{¶5} Copies of other IMs were introduced into evidence, which revealed portions of similar sexual conversations that appellee had had with other young females.

{¶6} On September 14, 1999, a jury found appellee guilty of one count of compelling prostitution, five counts of disseminating matter harmful to juveniles, eight counts of pandering obscenity involving a minor, and one count of illegal use of a minor in a nudity-oriented material or performance. The court sentenced appellee to a total of eighteen years in prison. After a hearing, the trial court found that appellee is a sexual predator.

{¶7} The court of appeals agreed with appellee that the evidence presented by the state was insufficient as a matter of law to sustain his convictions under R.C. 2907.321(A)(6) of pandering obscenity involving a minor. The court held that R.C. 2907.321(A)(6) does not plainly indicate an intention to impose strict liability on

2

the act of bringing child pornography into the state of Ohio and applied the culpable mental state of recklessness to appellee's conduct, pursuant to R.C. 2901.21(B).

{¶8} In support of its appeal, the state argues that a proper reading of R.C. 2907.321(A)(6) demonstrates the clear intent of the General Assembly to impose strict liability on the act of bringing child pornography into the state. We agree and reverse the court of appeals.

{¶9} It is undisputed that the General Assembly can "enact legislation with the purpose to impose strict criminal liability." *State v. Jordan* (2000), 89 Ohio St.3d 488, 493, 733 N.E.2d 601. In addition, there is no question that the General Assembly can specify the mental element required for each element of an offense. Id.

{¶10} We first consider the words of the statute to determine legislative intent. *Provident Bank v. Wood* (1973), 36 Ohio St.2d 101, 105, 65 O.O.2d 296, 304 N.E.2d 378. In determining legislative intent, our duty is "to give effect to the words used, not to delete words used or to insert words not used." *Columbus-Suburban Coach Lines, Inc. v. Pub. Util. Comm.* (1969), 20 Ohio St.2d 125, 127, 49 O.O.2d 445, 254 N.E.2d 8.

{¶11} R.C. 2907.321(A) provides:

{¶12} "(A) No person, with knowledge of the character of the material or performance involved, shall do any of the following:

{¶13} "* * *

{¶14} "(6) Bring or cause to be brought into this state any obscene material that has a minor as one of its participants or portrayed observers."

{¶15} R.C. 2901.21 provides:

{¶16} "(B) When the section defining an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in the section, then culpability is not required for a person to be guilty of the offense. When the section neither specifies culpability

nor plainly indicates a purpose to impose strict liability, recklessness is sufficient culpability to commit the offense.

**{¶17}** "* * *

**{¶18}** "(D) As used in this section:

**{¶19}** "* * *

**{¶20}** "(3) 'Culpability' means purpose, knowledge, recklessness, or negligence, as defined in section 2901.22 of the Revised Code."

**{¶21}** The court of appeals held that R.C. 2901.21(B) applies the element of recklessness to the act of bringing child pornography into the state. However, a court must be able to answer in the negative the following two questions before applying the element of recklessness pursuant to R.C. 2901.21(B): (1) does the section defining an offense specify any degree of culpability, and (2) does the section plainly indicate a purpose to impose strict criminal liability?

I.  R.C. 2907.321(A)(6) Indicates a Plain Intent to Impose Strict Criminal

Liability

**{¶22}** Appellant argues that the court of appeals misinterpreted the word "section" in R.C. 2901.21(B) to mean "division" of a Revised Code section, and mistakenly applied R.C. 2901.21. We agree. The General Assembly distinguishes between sections and divisions in the Ohio Revised Code. For example, R.C. 2901.21(A) begins, "Except as provided in *division* (B) of this *section*." (Emphasis added.)  Likewise, R.C. 2907.321(C) states, "Whoever violates this *section* is guilty of pandering obscenity involving a minor.  Violation of *division* (A)(1), (2), (3), (4), or (6) of this *section* is a felony of the second degree.  Violation of *division* (A)(5) of this *section* is a felony of the fourth degree.  If the offender previously has been convicted of or pleaded guilty to a violation of this *section* or *section* 2907.322 or 2907.323 of the Revised Code, pandering obscenity involving a minor in violation of *division* (A)(5) of the *section* is a felony of the third degree." (Emphasis added.)  Thus, in determining whether R.C. 2901.21(B) can operate to

4

supply the mental element of recklessness to R.C. 2907.321(A)(6), we need to determine whether the entire *section* includes a mental element, not just whether *division* (A)(6) includes such an element.

**{¶23}** R.C. 2907.321(A) includes the element of knowledge. The statute requires the state to prove, as a prerequisite to proving a defendant criminally liable for bringing into the state "any obscene material that has a minor as one of its participants or portrayed observers," that the defendant had "knowledge of the character of the material or performance involved." R.C. 2907.321(A)(6). Appellee argues that this knowledge requirement also applies to the act of bringing into the state obscene material that has a minor as one of its participants or portrayed observers. We disagree.

**{¶24}** In *State v. Wac* (1981), 68 Ohio St.2d 84, 22 O.O.3d 299, 428 N.E.2d 428, we found plain indications that the General Assembly meant to impose strict criminal liability. In that case, the appellant argued that recklessness was an element of bookmaking because R.C. 2915.02(A)(1) did not specify a culpable mental state for bookmaking. It provided:

**{¶25}** "(A) No person shall do any of the following:

**{¶26}** "(1) Engage in bookmaking, or knowingly engage in conduct that facilitates bookmaking."

**{¶27}** We rejected appellant's position. Noting that "[t]he General Assembly included the culpable mental state of 'knowingly' as an element of *facilitating* bookmaking," we held that because "there is no such requirement in the same subsection for bookmaking *per se*," the "exclusion 'plainly indicates a purpose to impose strict criminal liability * * *.' R.C. 2901.21(B)." (Emphasis sic.) *State v. Wac*, 68 Ohio St.2d at 86, 22 O.O.3d 299, 428 N.E.2d 428.

**{¶28}** We recognized that the clause "or knowingly engage in conduct that facilitates bookmaking" was a discrete clause and that the knowledge required by

that clause could not be inserted into the previous clause, "engage in bookmaking." R.C. 2901.21(B).

{¶29} Similarly, in R.C. 2907.321(A), knowledge is a requirement only for the discrete clause within which it resides: "with knowledge of the character of the material or performance involved." Thus, the state must prove that appellee knew the character of the material at issue. The state is not required to prove that appellee knew that in downloading files via America Online he was also transmitting those files from Virginia into Ohio.

{¶30} There are other indications outside the statute that plainly indicate a purpose to impose strict liability. The decision in *Wac* demonstrates that a crime may have different degrees of mental culpability for different elements. The General Assembly has assumed a strong stance against sex-related acts involving minors, as evidenced by the numerous statutes in the Ohio Revised Code providing for criminal liability for those acts. Therefore, it is reasonable to presume that the inclusion of a knowledge requirement regarding the character of the material and the absence of a mental element elsewhere in R.C. 2907.321 reflect legislative intent to impose strict liability for the act of bringing child pornography into the state of Ohio.

{¶31} Appellee argues that the statute was adopted in 1977, well before the advent of the Internet as a means of general communication, and that the prohibition on bringing material into the state cannot constitutionally be applied to downloading. However, application of a criminal statute to a specific factual circumstance not anticipated when the statute was adopted is not a ground for not applying the statute. "[F]ew words possess the precision of mathematical symbols, most statutes deal with untold and unforeseen variations in factual situations, and the practical necessities of discharging the business of government inevitably limit the specificity with which legislators can spell out prohibitions. Consequently, no

6

more than a reasonable degree of certainty can be demanded." *Boyce Motor Lines, Inc. v. United States* (1952), 342 U.S. 337, 340, 72 S.Ct. 329, 96 L.Ed. 367.

II. There Is Sufficient Evidence to Show that Appellee Knew the Character of the Material He Downloaded

{¶32} Appellee argues that there was insufficient evidence that he knew the character of the materials before he brought them into Ohio. Pursuant to R.C. 2907.321(B)(3), "the trier of fact may infer that a person in the material or performance involved is a minor if the material or performance, through its title, text, visual representation, or otherwise, represents or depicts the person as a minor." Review of the downloaded images reveals that the jury reasonably could find the material to be obscene and have a minor as a participant or portrayed observer. Evidence also shows that the files downloaded from America Online were never deleted, as they might have been were they downloaded by mistake. Finally, appellee's numerous E-mail transmissions and IMs of a sexual nature provided the jury with evidence from which it could reasonably find that appellee knew of the sexual nature of the files before he downloaded them. For these reasons, we find the evidence sufficient to support a conviction based on knowledge.

{¶33} For the foregoing reasons, we reverse the judgment of the court of appeals.

Judgment reversed.

DOUGLAS, RESNICK and F.E. SWEENEY, JJ., concur.

COOK, J., concurs in judgment.

PFEIFER and LUNDBERG STRATTON, JJ., dissent.

———————————

**LUNDBERG STRATTON, J., dissenting.**

**{¶34}** I agree with the court of appeals' decision to affirm Maxwell's convictions for one count of compelling prostitution, five counts of disseminating matter harmful to juveniles, and one count of illegal use of a minor in a nudity-oriented material or performance. However, for the reasons that follow, I respectfully dissent from the majority's analysis and conclusion with respect to the eight counts of pandering obscenity involving a minor in violation of R.C. 2907.321(A)(6). While I would find that defendant's conduct constitutes a violation of R.C. 2907.321(A)(5) (possession of child pornography), I would find that R.C. 2907.321(A)(6) (transportation of child pornography into this state) does not apply.

**{¶35}** Over thirty years ago, the Internet was launched at the Department of Defense. Internet Society, A Brief History of the Internet and Related Networks *<www.isoc.org/internet/history/brief.shtml>*. Today, more than four hundred fifty million people worldwide have home-based Internet access, NetRatings, Inc., *<www.nielsen-netratings.com/hot_off_the_net.jsp>*, and more than fifty percent of children in the United States use the Internet at school, home, or a community access center, Aftab, The Parent's Guide to Protecting Your Children in Cyberspace (2000) 1. Prior to the advent of the Internet, consumers of child pornography operated through an underground network of mail order magazines and videotapes. But the World Wide Web's relative simplicity via the use of "point-and-click" hypertext links has allowed child pornography to be mass distributed in seconds to a large group of consumers, all in the privacy of their own homes. The anonymity offered by the Internet may lead some individuals to explore areas of cyberspace that once were inaccessible and that they may not otherwise have been inclined to explore. In essence, while the Internet has brought volumes of useful information to the fingertips of consumers, it has also drawn nearer the dark side of humanity.

**{¶36}** Clearly child pornography is insidious and inherently evil. For that very reason, the General Assembly has enacted statutes to address and punish this evil. Specifically, R.C. 2907.321(A) provides:

**{¶37}** "(A) No person, with knowledge of the character of the material or performance involved, shall do any of the following:

**{¶38}** "(1) Create, reproduce, or publish any obscene material that has a minor as one of its participants or portrayed observers;

**{¶39}** "(2) Promote or advertise for sale or dissemination; sell, deliver, disseminate, display, exhibit, present, rent, or provide; or offer or agree to sell, deliver, disseminate, display, exhibit, present, rent, or provide, any obscene material that has a minor as one of its participants or portrayed observers;

**{¶40}** "(3) Create, direct, or produce an obscene performance that has a minor as one of its participants;

**{¶41}** "(4) Advertise or promote for presentation, present, or participate in presenting an obscene performance that has a minor as one of its participants;

**{¶42}** "(5) Buy, procure, possess, or control any obscene material, that has a minor as one of its participants;

**{¶43}** "(6) Bring or cause to be brought into this state any obscene material that has a minor as one of its participants or portrayed observers."

**{¶44}** R.C. 2907.321 clearly provides a basis for prosecuting and convicting Maxwell for his actions of having child pornography on the hard drive of his personal computer, i.e., the prohibition of (A)(5) against possession of child pornography (a fourth degree felony). However, the state charged Maxwell under (A)(6), which provides, "No person, with knowledge of the character of the material or performance involved, shall * * * [b]ring or cause to be brought into this state any obscene material that has a minor as one of its participants or portrayed observers," charged him, that is, with importing child pornography into this state

via his computer (a second degree felony). I do not believe that (A)(6) should be applied to these facts.

{¶45} The majority concludes that the act of transporting child pornography via computer is a strict-liability offense. I agree that the act of transporting child pornography via the mail, a vehicle, or some other traditional physical method that would have been known to the General Assembly when drafting this statute would fall under the guise of strict liability. In those traditional situations, offenders are aware that they are transporting child pornography into the state, and the General Assembly can fairly hold them strictly liable if they physically carry it across ascertainable borders, even without knowledge. But in this case, the defendant was in the state of Ohio, communicating with others in the state of Ohio via his computer modem and claims to have had no knowledge or expectation that he was crossing state lines. In fact, but for the fact that his Internet service provider America Online ("AOL") is based out of state, in Virginia, no violation of (A)(6), as interpreted by the majority, would have occurred.

{¶46} In today's Internet environment, users with very little technical knowledge can click on a hypertext link or an icon on his or her screen and be automatically transported to a remote computer site without having understood where, physically, they have landed on the World Wide Web. And Internet service providers such as AOL have made the navigation of the uncharted waters of cyberspace all the easier. Consumers often receive free software in the mail from a major Internet service provider, such as AOL in this case, and that software normally offers a certain number of hours of Internet access for free. The consumer simply inserts the software into his or her personal computer and follows the instructions given on the disk. After entering a valid credit card number, selecting a screen name and password, and choosing a local access telephone number for his or her modem to dial to access the Internet service provider, the consumer has the full resources of the World Wide Web at his or her fingertips.

10

{¶47} Consumers, typically, do not know where, geographically, their Internet service provider's computer servers are located. Indeed, I believe it would baffle most AOL subscribers to learn that even when they send an e-mail to themselves, the e-mail travels from their computer to the AOL servers in Virginia and back to their own computer. For all a consumer knows, he or she is accessing information stored in Ohio, since normally a local telephone number is used to dial into the Internet service provider. Notably, there was no evidence in this case that these images did *not* originate in Ohio.

{¶48} Subsection (A)(6) of R.C. 2907.321 was enacted in 1984, long before the Internet was generally accessible by the public. Sub.H.B. No. 44, 140 Ohio Laws, Part I, 1726. Thus, R.C. 2907.321(A)(6), which prohibits the transportation of child pornography into Ohio, was never drafted with the Internet in mind. While it is true that the law must be malleable enough to adapt to future circumstances, I simply do not believe that our General Assembly could have foretold this evolution in the information superhighway. In this case of first impression, the law has not yet caught up with technology. For that reason, I believe that the decision to prosecute individuals for what their computer wires do, unbeknownst to them, should be left to the General Assembly.

{¶49} At the time R.C. 2907.321 was drafted, e-mail, web sites, chat rooms, newsgroups, bulletin board services, and Internet relay chat did not exist. Today, it is possible for an unsuspecting person to possess child pornography without even knowing it. If a user receives an e-mail with an attachment containing child pornography, that image can be on the hard drive of the user's computer before the file is even opened. Hughes, Kids Online (1998) 61. Further, an Internet user can type in seemingly innocent search terms into a search engine and pull up pornographic material. For example, a child searching for "Little Women" by Louisa May Alcott may retrieve x-rated websites. Even a mistakenly typed web address may direct an innocent user seeking information on the White House to a

pornographic site. Id. at 58. Thus, as frightening as it is, innocent Internet users can possess pornography of any type, child pornography or other, with no intention of doing so.

{¶50} Logic suggests that an Internet user upon discovering that he or she possesses illegal material could simply delete the illegal material from his or her hard drive; not always so. As illustrated by this case, investigators can make a "mirror image" of the user's hard drive. In so doing, in certain circumstances, all files, even those files once thought to be deleted, can be conjured up from the user's computer and reconstructed. This is because the act of deleting does not in all cases actually cause the selected information or image to be discarded from the hard drive. Rather, the act of deleting can merely mark that portion on the hard drive as available to store new information. Indeed, even once new information is stored over the old "deleted" information, the "deleted" information can in some cases still be resuscitated by computer-savvy investigators. See Aftab, The Parent's Guide to Protecting Your Children in Cyberspace, at 147.

{¶51} I certainly do not condone Maxwell's actions in this case, but I believe that our statutes as written adequately address his actions without resorting to laws that never contemplated these actions. The state could have properly charged and convicted Maxwell for possession of child pornography in violation of R.C. 2907.321(A)(5). Possession of child pornography is a fourth-degree felony punishable by six to eighteen months of imprisonment. See R.C. 2929.14(A)(4). However, the state charged and convicted Maxwell for bringing child pornography into the state of Ohio in violation of R.C. 2907.321(A)(6). Transportation of child pornography is a second-degree felony punishable by two to eight years of imprisonment. In my view, it is up to the General Assembly to increase the penalty for actions such as Maxwell's by amendments to the statute. I would find that the General Assembly never contemplated the Internet as a vehicle for importation of child pornography into this state when it drafted R.C. 2907.321(A)(6), and I do not

believe it is within the province of the court to interpret the statute to do so. Thus, I would find that the legislature never intended R.C. 2907.321(A)(6) to be applied to acts involving computers.

{¶52} As the principal drafter of our Declaration of Independence once wrote, "[L]aws and institutions must go hand in hand with the progress of the human mind. As that becomes more developed, more enlightened, as new discoveries are made, new truths disclosed, and manners and opinions change with the change of circumstances, institutions must advance also, and keep pace with the times." Thomas Jefferson to Samuel Kercheval, July 12, 1816, Padover, The Writings of Thomas Jefferson (1967) 351.

{¶53} I believe that this case represents just such an example of the law failing to keep pace with the times. Consumers certainly do not have any reason to know the complexity of the network connections made with the click of their mouse. Therefore, I find that charging individuals with the knowledge of the internal workings of their Internet service provider is repugnant to fairness and due process.

{¶54} The proliferation of child pornography available on the Internet and the complex legal issues generated from that proliferation illustrate the need for our General Assembly to fully explore and discuss these issues.

{¶55} To that end, in February, the General Assembly enacted Sub.H.B. No. 8, which amends R.C. 2907.01(J) to make it explicit that the definition of "material" that applies to the sex offense laws includes images appearing on a computer monitor or computer hard drive or similar data storage device, except under specified circumstances. This represents an attempt by our General Assembly to bring the law up to speed with technology, but other issues, such as those in this case, remain unaddressed.

{¶56} I agree with the court of appeals' decision to affirm Maxwell's convictions for one count of compelling prostitution, five counts of disseminating

matter harmful to juveniles, and one count of illegal use of a minor in a nudity-oriented material or performance. However, because it is the duty of the General Assembly to make the necessary adjustments to the law, I dissent, and would affirm the court of appeals' judgment that the evidence presented by the state was insufficient as a matter of law to sustain Maxwell's convictions under R.C. 2907.321(A)(6), transporting child pornography into the state of Ohio.

PFEIFER, J., concurs in the foregoing dissenting opinion.

_____

Ron O'Brien, Franklin County Prosecuting Attorney, and Scott M. Forehand, Assistant Prosecuting Attorney, for appellant.

Mary Ann Torian and Clayton G. Napier, for appellee.

Betty D. Montgomery, Attorney General, and Andrew D. Bowers, Assistant State Solicitor, urging reversal for amicus curiae, Attorney General of Ohio.

_____