THE STATE OF OHIO, APPELLEE, *v.* HORNER, APPELLANT.

[Cite as *State v. Horner*, 126 Ohio St.3d 466, 2010-Ohio-3830.]

*Criminal law — Indictments — Sufficiency — Indictment charging offense by tracking language of criminal statute not defective for failure to identify culpable mental state when statute itself fails to specify mental state — When criminal statute includes mens rea element in one discrete clause, subsection, or division but not in another, State v. Wac and State v. Maxwell apply to determine mental state — Failure to object to defect in indictment constitutes waiver of all but plain error.*

(Nos. 2009-0079 and 2009-0311 — Submitted April 20, 2010 — Decided August 27, 2010.)

APPEAL from and CERTIFIED by the Court of Appeals for Lucas County, No. L-07-1224, 2008-Ohio-6169.

_____

**SYLLABUS OF THE COURT**

1. An indictment that charges an offense by tracking the language of the criminal statute is not defective for failure to identify a culpable mental state when the statute itself fails to specify a mental state. (*State v. Buehner*, 110 Ohio St.3d 403, 2006-Ohio-4707, 853 N.E.2d 1162, reaffirmed; *State v. Colon*, 118 Ohio St.3d 26, 2008-Ohio-1624, 885 N.E.2d 917, overruled; *State v. Colon*, 119 Ohio St.3d 204, 2008-Ohio-3749, 893 N.E.2d 169, overruled in part.)

2. When the General Assembly includes a mens rea element in one discrete clause, subsection, or division of a statute but not in another discrete clause, subsection, or division of that statute, courts must apply the analysis in *State v. Wac* (1981), 68 Ohio St.2d 84, 22 O.O.3d 299, 428

N.E.2d 428, and *State v. Maxwell*, 95 Ohio St.3d 254, 2002-Ohio-2121, 767 N.E.2d 242, to determine the mental state where none is specified.

3.     By failing to timely object to a defect in an indictment, a defendant waives all but plain error on appeal. (Crim.R. 12(C)(2) and 52(B), followed; *State v. Colon*, 118 Ohio St.3d 26, 2008-Ohio-1624, 885 N.E.2d 917, overruled.)

_____

**LUNDBERG STRATTON, J.**

{¶ 1}   Pursuant to Section 3(B)(4), Article IV of the Ohio Constitution and App.R. 25, the Sixth District Court of Appeals certified its judgment in this case as being in conflict with the judgments of the Eighth District Court of Appeals in *State v. Briscoe*, 8th Dist. No. 89979, 2008-Ohio-6276, and the Third District Court of Appeals in *State v. Alvarez*, 3rd Dist. No. 4-08-02, 2008-Ohio-5189, on the following issue: "Whether the holdings of *State v. Colon*, 118 Ohio St.3d 26, 2008-Ohio-1624 [885 N.E.2d 917] and *State v. Colon*, 119 Ohio St.3d 204, 2008-Ohio-3749 [893 N.E.2d 169] are applicable to the offense of aggravated robbery in violation of R.C. 2911.01(A)(3) or only to the offense of robbery, a violation of R.C. 2911.02(A)(2)." We also accept appellant's discretionary appeal on Proposition of Law Nos. I and II but stayed briefing on the appeal.[1]

{¶ 2}   We hold that neither of the two *Colon* cases are applicable and the indictment was not defective. Accordingly, we affirm the judgment of the court of appeals.

## I. Facts

{¶ 3}   In March 2006, Gregory Horner, defendant-appellant, and his codefendant, James Hahn, met two Michigan businessmen, Robert Peck and Tim

_____

1. In view of our resolution of the certified question, we dismiss the appeal as having been improvidently accepted.

Mulroy, and Robert's son, Kyle, on the pretense of selling Peck and Mulroy a muscle car. Horner and Hahn beat the victims and robbed them of cash.

{¶ 4} A grand jury indicted Horner on six counts relating to his crimes, including two counts of aggravated robbery, in violation of R.C. 2911.01(A)(3), with firearm specifications, in relation to the two adult victims; one count of aggravated robbery in violation of R.C. 2911.01(A)(3), which was later amended to R.C. 2911.01(A)(1), with a firearm specification; and three counts of felonious assault in violation of R.C. 2903.11(A)(1), with firearm specifications.

{¶ 5} Horner pleaded no contest to five counts. In exchange, the state nolled one count of felonious assault and recommended a maximum sentence of ten years. Horner's codefendant was sentenced to 12 years rather than the state-recommended sentence of ten years. Horner then orally requested leave to obtain new counsel and to file a motion to withdraw his no-contest plea. The trial court held a hearing on the motion to withdraw his plea in May 2007. Horner, who had retained new counsel, testified on direct and cross-examination. The trial court denied the motion to withdraw the plea and sentenced him to 11 years.

{¶ 6} On appeal, Horner argued for the first time that the two counts of aggravated robbery in the indictment were insufficient pursuant to *State v. Colon*, 118 Ohio St.3d 26, 2008-Ohio-1624, 885 N.E.2d 917 ("*Colon I*"), and *State v. Colon,* 119 Ohio St.3d 204, 2008-Ohio-3749, 893 N.E.2d 169 ("*Colon II*"), because a culpable mental state was not included in the indictment. The Sixth District Court of Appeals disagreed, holding that *Colon I* and *Colon II* apply only to cases in which a defendant has been indicted for robbery pursuant to R.C. 2911.02(A)(2). Since Horner was charged with aggravated robbery rather than robbery, the court held that his indictment was not defective. Thus, the court held that there was no plain error and, accordingly, affirmed the judgment of the trial court.

**{¶ 7}** The Sixth District certified a conflict over the applicability of *Colon I* and *Colon II*, and recognizing the conflict, we accepted jurisdiction.

## II. Law and Analysis

### A. The Indictment

**{¶ 8}** Section 10, Article I of the Ohio Constitution provides that "no person shall be held to answer for a capital, or otherwise infamous, crime, unless on presentment or indictment of a grand jury." Crim.R. 7(B) explains the structure and sufficiency requirements of an indictment: "The statement may be made in ordinary and concise language without technical averments or allegations not essential to be proved. The statement may be in the words of the applicable section of the statute, provided the words of that statute charge an offense, or in words sufficient to give the defendant notice of all the elements of the offense with which the defendant is charged."

**{¶ 9}** When the offense does not track the language of the statute, Crim.R. 7(D) addresses amendments to criminal indictments: "The court may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged." We have held that "[a]n indictment, which does not contain all the essential elements of an offense, may be amended to include the omitted element, if the name or the identity of the crime is not changed, and the accused has not been misled or prejudiced by the omission of such element from the indictment. (Crim.R. 7[D] construed and applied.)" *State v. O'Brien* (1987), 30 Ohio St.3d 122, 30 OBR 436, 508 N.E.2d 144, paragraph two of the syllabus.

**{¶ 10}** The purpose of a grand jury indictment has always been to give notice to the accused: "[A] criminal offense must be charged with reasonable certainty in the indictment so as to apprise the defendant of that which he may

4

expect to meet and be required to answer; so that the court and jury may know what they are to try, and the court may determine without unreasonable difficulty what evidence is admissible." *Horton v. State* (1911), 85 Ohio St. 13, 19, 96 N.E. 797.

{¶ 11} Expanding on the idea of notice to the accused, we have held that "[t]he purposes of an indictment are to give an accused adequate notice of the charge, and enable an accused to protect himself or herself from any future prosecutions for the same incident." *State v. Buehner*, 110 Ohio St.3d 403, 2006-Ohio-4707, 853 N.E.2d 1162, ¶ 7, citing *Weaver v. Sacks* (1962), 173 Ohio St. 415, 417, 20 O.O.2d 43, 183 N.E.2d 373 and *State v. Sellards* (1985), 17 Ohio St.3d 169, 170, 17 OBR 410, 478 N.E.2d 781. In *Buehner*, we held that an indictment that tracked the language of the charged offense and identified a predicate offense by statute number but did not include each element of the predicate offense still provided the defendant with adequate notice of the charges against him. Id. at syllabus.

{¶ 12} In *Buehner*, the defendant was charged with ethnic intimidation under R.C. 2927.12(A), an element of which is the commission of a predicate offense ("No person shall violate [R.C.] 2903.21, 2903.22, 2909.06, or 2917.21 * * * by reason of the race, color, religion, or national origin of another person or group of persons"). The indictment tracked the language of the statute and identified by statute number which of the several predicate offenses was being charged. We rejected the argument that the indictment was defective for failing to list the elements of the predicate offense, concluding that it is the predicate offense itself and not the elements of the predicate offense that is an essential element of the charged offense. Therefore, the indictment provided the defendant with adequate notice of the charge against him. Id. at ¶ 12.

{¶ 13} Here, the two counts of the indictment in question read: "[I]n attempting or committing a theft offense as defined in §2913.01 of the Revised

Code, or in fleeing immediately after the attempt or offense, [Horner] did inflict, or attempt to inflict, serious physical harm on another, in violation of §2911.01(A)(3) OF THE OHIO REVISED CODE, AGGRAVATED ROBBERY, BEING A FELONY OF THE FIRST DEGREE."

{¶ 14} R.C. 2911.01 defines the elements of aggravated robbery as follows:

{¶ 15} "(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:

{¶ 16} " * * *

{¶ 17} "(3) Inflict, or attempt to inflict, serious physical harm on another."

{¶ 18} As required by *Buehner*, the language of the indictment tracked the language of the statute. However, Horner argues that this court's post-*Buehner* decisions in *Colon I* and *Colon II* render his indictment defective on counts one and two and, in turn, require this court to vacate those convictions. We disagree.

*B. Absence of a Culpable Mental State and the Role of R.C. 2901.21(B)*

{¶ 19} As can be seen above, the aggravated-robbery statute does not expressly state a mental state for aggravated robbery when it involves inflicting or attempting to inflict serious physical harm on another during the commission of the robbery. Consequently, we must turn to R.C. 2901.21(B), which provides guidance in determining the requirements for criminal liability when a statute defining an offense does not provide a mental state.

{¶ 20} R.C. 2901.21(B) provides:

{¶ 21} "When the *section defining an offense* does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in the section, then culpability is not required for a person to be guilty of the offense. When the *section* neither specifies culpability

6

nor plainly indicates a purpose to impose strict liability, recklessness is sufficient culpability to commit the offense." (Emphasis added.)

{¶ 22} In deciding whether, pursuant to R.C. 2901.21(B), recklessness is the culpable mental state required to commit the crime of aggravated robbery as defined in R.C. 2911.01(A)(3), we first consider the words of the statute to determine legislative intent. *Provident Bank v. Wood* (1973), 36 Ohio St.2d 101, 105, 65 O.O.2d 296, 304 N.E.2d 378. We must "give effect to the words used, not * * * delete words used or * * * insert words not used." *Columbus-Suburban Coach Lines, Inc. v. Pub. Util. Comm.* (1969), 20 Ohio St.2d 125, 127, 49 O.O.2d 445, 254 N.E.2d 8.

{¶ 23} Horner argues that recklessness is the requisite culpable mental state for aggravated robbery under R.C. 2911.01(A)(3). The state contends that no specific mental state must be charged or proven. Under R.C. 2901.21(B), recklessness is sufficient culpability to commit an offense if two factors are present. First, the section of the Revised Code defining the offense must not specify any degree of culpability. Second, the section must not plainly indicate a purpose to impose strict liability.

1. Analysis of R.C. 2901.21(B) in *State v. Wac* and *State v. Maxwell*

{¶ 24} Our line of cases conducting this analysis begins with the seminal case of *State v. Wac* (1981), 68 Ohio St.2d 84, 22 O.O.3d 299, 428 N.E.2d 428, where we found plain indications that the General Assembly meant to impose strict criminal liability for the crimes of bookmaking in violation of R.C. 2915.02(A)(1) and operating a gambling house in violation of R.C. 2915.03(A)(1). Wac argued that recklessness was an element of bookmaking because R.C. 2915.02(A)(1) neither specified a culpable mental state nor plainly indicated a purpose to impose strict liability.

{¶ 25} R.C. 2915.02 provides:

{¶ 26} "(A) No person shall do any of the following:

**{¶ 27}** "(1) Engage in bookmaking, or knowingly engage in conduct that facilitates bookmaking."

**{¶ 28}** We held that "[t]he General Assembly included the culpable mental state of 'knowingly' as an element of *facilitating* bookmaking. Nevertheless, there is no such requirement in the same subsection for bookmaking *per se*. This exclusion 'plainly indicates a purpose to impose strict criminal liability * * *.' R.C. 2901.21(B)." (Emphasis sic.) Id., 68 Ohio St.2d at 86, 22 O.O.3d 299, 428 N.E.2d 428.

**{¶ 29}** Further, Wac argued that recklessness was an element of operating a gambling house because R.C. 2915.03(A)(1) did not specify a culpable mental state for using or occupying premises for gambling. The statute provides:

**{¶ 30}** "(A) No person, being the owner or lessee, or having custody, control, or supervision of premises, shall:

**{¶ 31}** "(1) Use or occupy such premises for gambling in violation of section 2915.02 of the Revised Code;

**{¶ 32}** "(2) Recklessly permit such premises to be used or occupied for gambling in violation of section 2915.02 of the Revised Code."

**{¶ 33}** With regard to operating a gambling house, we held that "[t]he General Assembly included recklessness as an element of permitting gambling on one's premises in subsection (2). Subsection (1), however, does not contain a comparable standard. This exclusion 'plainly indicates a purpose to impose strict criminal liability * * *.' R.C. 2901.21(B)." *Wac*, 68 Ohio St.2d at 87, 22 O.O.3d 299, 428 N.E.2d 428.

**{¶ 34}** Thus, in R.C. 2915.02 (bookmaking), we concluded that when a single subsection of a statute with two discrete clauses contains one clause that expresses a culpable mental state and another discrete clause that does not, the General Assembly has plainly indicated a purpose to impose strict criminal liability under R.C. 2901.21(B). In addition, in R.C. 2915.03 (gambling house),

which involved two separate divisions of the statute rather than a single subsection with two discrete clauses, we concluded that the inclusion of a culpable mental state in one division and the omission of a culpable mental state from another division means that the General Assembly plainly indicated a purpose to impose strict criminal liability for the second division.

{¶ 35} Continuing the analysis from *State v. Wac,* in *State v. Maxwell*, 95 Ohio St.3d 254, 2002-Ohio-2121, 767 N.E.2d 242, this court considered R.C. 2907.321(A)(6), which provides:

{¶ 36} "(A) No person, with knowledge of the character of the material or performance involved, shall do any of the following:

{¶ 37} "* * *

{¶ 38} "(6) Bring or cause to be brought into this state any obscene material that has a minor as one of its participants or portrayed observers."

{¶ 39} In examining whether R.C. 2901.21(B) supplied the culpable mental state of recklessness for the element of bringing child pornography into the state, we noted that "we need to determine whether the entire *section* includes a mental element, not just whether *division* (A)(6) includes such an element." (Emphasis sic.) *Maxwell,* 95 Ohio St.3d 254, 2002-Ohio-2121, 767 N.E.2d 242, at ¶ 22. We concluded that in R.C. 2907.321(A), "knowledge is a requirement only for the discrete clause within which it resides: 'with knowledge of the character of the material or performance involved.' Thus, the state must prove that appellee knew the character of the material at issue. The state is not required to prove that appellee knew that in downloading files via America Online he was also transmitting those files from Virginia into Ohio." Id., ¶ 29. The court held that the statute plainly indicated a purpose to impose strict liability, thus precluding the application of recklessness as the culpable mental state.

2. Robbery, Aggravated Robbery, and *State v. Colon*

{¶ 40} Turning now to robbery and aggravated robbery, we have previously held that the deadly-weapon element of robbery in R.C. 2911.02(A)(1) does not require proof of a mens rea. *State v. Wharf* (1999), 86 Ohio St.3d 375, 715 N.E.2d 172. Similarly, we have also held that the deadly-weapon element of aggravated robbery in R.C. 2911.01(A)(1) does not require a mens rea. *State v. Lester*, 123 Ohio St.3d 396, 2009-Ohio-4225, 916 N.E.2d 1038. Neither case followed the *Wac* or *Maxwell* analysis, but in both cases, we concluded that the General Assembly had intended that a theft offense committed while an offender was in possession or control of a deadly weapon constituted robbery (and that brandishing or using a deadly weapon constituted aggravated robbery), and no intent beyond that required for the theft offense must be proven.

{¶ 41} In *Colon I*, we considered the culpable mental state for the offense of robbery in violation of R.C. 2911.02(A)(2), i.e., physical-harm robbery. Again, this court did not apply the analysis used in *Wac* and *Maxwell*. However, neither did *Colon I* overrule *Wac* or *Maxwell*. Rather, we simply concluded in *Colon I* that while the statute did not specify a particular degree of culpability for the physical-harm element, its language does not plainly indicate that strict liability is the mental standard. Thus, the court concluded that the state was required to prove recklessness and that the indictment was defective for failure to charge recklessness, a point that the state conceded. 118 Ohio St.3d 26, 2008-Ohio-1624, 885 N.E.2d 917, at ¶ 14-15.

{¶ 42} We went on to hold that "[w]hen an indictment fails to charge a mens rea element of a crime and the defendant fails to raise that defect in the trial court, the defendant has not waived the defect in the indictment," id. at syllabus, and that instead, a structural error analysis is appropriate, id. at ¶ 23.

{¶ 43} Upon reconsideration in *Colon II*, 119 Ohio St.3d 204, 2008-Ohio-3749, 893 N.E.2d 169, we limited *Colon I*, holding that it was prospective only, id. at ¶ 3, and that structural-error analysis is not appropriate unless there are

10

multiple errors throughout the trial that are inextricably linked to the defective indictment, id. at ¶ 7, and that the syllabus in *Colon I* was confined to the facts of that case, id. at ¶ 8.

**{¶ 44}** Still, the effect of our *Colon* holdings meant that for the first time, an indictment that charged an offense in the exact language of the Revised Code could still be defective when the statute itself failed to specify a culpable mental state. As a result, *Colon I* and *Colon II* have been called "a boon to defendants, a headache to appellate courts, and a nightmare to prosecutors." *State v. Lester*, 123 Ohio St.3d 396, 2009-Ohio-4225, 916 N.E.2d 1038, ¶ 35 (Lanzinger, J., concurring in judgment only).

**{¶ 45}** Today we recognize the confusion created by *Colon I* and *II* and hold that when an indictment fails to charge a mens rea element of the crime, but tracks the language of the criminal statute describing the offense, the indictment provides the defendant with adequate notice of the charges against him and is, therefore, not defective. See *State v. Buehner*, 110 Ohio St.3d 403, 2006-Ohio-4707, 853 N.E.2d 1162 (an indictment that does not identify the elements of a predicate offense provides adequate notice by citing the statute defining the predicate offense). Consequently, we respond to the certified question by holding that *Colon I*, 118 Ohio St.3d 26, 2008-Ohio-1624, 885 N.E.2d 917, and *Colon II*, 119 Ohio St.3d 204, 2008-Ohio-3749, 893 N.E.2d 169, are inapplicable to the offense of aggravated robbery in violation of R.C. 2911.01(A)(3). In fact, *Colon I* is overruled, and *Colon II* is overruled to the extent that it holds that such an indictment is defective.

**{¶ 46}** Further, we hold that failure to timely object to a defect in an indictment constitutes a waiver of the error. Crim.R. 12(C)(2) (objections to defect in indictment must be raised before trial). Any claim of error in the indictment in such a case is limited to a plain-error review on appeal. *State v. Frazier* (1995), 73 Ohio St.3d 323, 652 N.E.2d 1000; Crim.R. 52(B).

*C. Application of R.C. 2901.21(B) to 2911.01(A)(3)*

**{¶ 47}** It remains to be determined what mental state, if any, applies to aggravated robbery as described in R.C. 2911.01(A)(3). As stated previously, R.C. 2901.21(B) supplies the mental state of recklessness only when two conditions are present: (1) no mental state is specified in the relevant statute and (2) the statute does not plainly indicate a purpose to impose strict liability.

**{¶ 48}** We reaffirm our *Wac/Maxwell* analysis. Therefore, we need to examine the entire section — not just division (A)(3) — for references to a mental state. This existence or nonexistence of specified mental states elsewhere in R.C. 2911.01 will inform our analysis of whether (A)(3) was meant to be a strict-liability offense.

**{¶ 49}** R.C. 2911.01(A) includes the element of attempting or committing a theft offense, which incorporates all the elements of theft, including its mental state. However, that mental state is applicable to the theft aspect in division (A) only, and its incorporation into division (A) does not provide a mental state for the physical-harm element described in subsection (A)(3). See *Maxwell*, 95 Ohio St.3d 254, 2002-Ohio-2121, 767 N.E.2d 242, ¶ 23 (rejecting the argument that the mental state in a division of the relevant statute for one element of an offense also applies to a subsection in that division that does not specify a mental state).

**{¶ 50}** Moreover, division (B) of the aggravated-robbery statute specifies the culpable mental state of "knowingly" (" No person, without privilege to do so, shall knowingly remove or attempt to remove a deadly weapon from the person of a law enforcement officer, or shall knowingly deprive or attempt to deprive a law enforcement officer of a deadly weapon * * *").

**{¶ 51}** Additionally, this court has already held that subsection (1) of division (A), which also does not specify a mental element, is a strict-liability offense, based on the court's conclusion that R.C. 2911.01(A)(1) plainly indicates a purpose to impose strict liability. *Lester*, 123 Ohio St.3d 396, 2009-Ohio-4225,

916 N.E.2d 1038, ¶ 32. By choosing language in R.C. 2911.01(A)(3) that makes it a crime to merely inflict or attempt to inflict serious physical harm, as opposed to requiring a purpose or intent to injure, the General Assembly similarly has indicated its purpose to impose strict liability. See *Wharf*, 86 Ohio St.3d at 378, 715 N.E.2d 172; *Lester*, at ¶ 20.

**{¶ 52}** Accordingly, under the *Wac/Maxwell* approach to applying R.C. 2901.21(B), in defining the offense of serious-physical-harm aggravated robbery, R.C. 2911.01(A)(3) "plainly indicates a purpose to impose strict liability." It is clear that the General Assembly intended R.C. 2911.01(A)(3) to hold persons responsible for aggravated robbery because of the heightened potential for even accidental physical harm that results from the commission of the robbery.

**{¶ 53}** The section defining the offense—R.C. 2911.01—specifies "knowingly" as a mens rea for the crime defined in division (B) of that statute, and R.C. 2911.01(A)(3) includes as an element an underlying theft offense, which itself includes a mens rea. Additionally, R.C. 2911.01(A)(3), defining the offense of serious-physical-harm aggravated robbery, plainly indicates a purpose to impose strict liability. Accordingly, R.C. 2911.01(A)(3) does not require proof of a mental state, and an indictment that does not identify a mental state is not defective.

### III. Conclusion

**{¶ 54}** For all of the reasons expressed above, we hold that an indictment that charges an offense by tracking the language of the criminal statute is not defective for failure to identify a culpable mental state when the statute itself fails to specify a mental state. We further hold that when the General Assembly includes a mens rea element in one discrete clause, subsection, or division of a statute but not in another discrete clause, subsection, or division of that statute, courts must apply the analysis in *State v. Wac* (1981), 68 Ohio St.2d 84, 22 O.O.3d 299, 428 N.E.2d 428, and *State v. Maxwell*, 95 Ohio St.3d 254, 2002-

Ohio-2121, 767 N.E.2d 242, to determine the mental state where none is specified. We hold that by failing to timely object to a defect in an indictment, a defendant waives all but plain error on appeal. Because *Colon I* represents a departure from these principles, it is overruled.

**{¶ 55}** Thus, because the language of Horner's indictment charging him with aggravated robbery tracked the aggravated robbery statute, R.C. 2911.01(A)(3), and because the statute does not require any further mens rea requirement beyond that encompassed in the theft portion of the statute, the grand jury considered the essential elements of aggravated robbery. Accordingly, we uphold the appellate court's determinations that the indictment was not defective and that there was no plain error, and we affirm the judgment of the court of appeals.

Judgment affirmed.

O'CONNOR, O'DONNELL, and CUPP, JJ., concur.

LANZINGER, J., concurs in part and dissents in part.

PFEIFER, J., dissents.

BROWN, C.J., not participating.

—————————————

**LANZINGER, J., concurring in part and dissenting in part.**

**{¶ 56}** I concur in the judgment of the court and in the first and third syllabus paragraphs of the majority's opinion; however, I dissent from the majority's holding that, by not specifying a mens rea, R.C. 2911.01(A)(3) plainly indicates an intent to impose strict liability.

**{¶ 57}** R.C. 2901.21(B) establishes the mens rea of recklessness as the default standard of liability when no mens rea is specified: "When the section [defining an offense] *neither specifies culpability* nor *plainly indicates a purpose to impose strict liability*, recklessness is sufficient culpability to commit the offense." (Emphasis added.)

14

**{¶ 58}** The majority has mistakenly held that the lack of mens rea alone is sufficient to indicate an intention to impose strict liability, stating, "By choosing language in R.C. 2911.01(A)(3) that makes it a crime to merely inflict or attempt to inflict serious physical harm, as opposed to requiring a purpose or intent to injure, the General Assembly * * * has indicated its purpose to impose strict liability." Majority opinion at ¶ 51. In other words, the majority rewrites the statute to say that unless there is "specific intent," the default standard is strict liability, and no mental state need be proven. But to "inflict or attempt to inflict serious physical harm," as that phrase is used in R.C. 2911.01(A)(3), implies action on the part of a defendant that requires a mental state of some degree, unless it has been clearly dispensed with. The General Assembly explicitly provides in R.C. 2901.21(B) that recklessness is the default mens rea, unless there is a clear indication that strict liability is intended.

**{¶ 59}** In concluding that R.C. 2911.01(A)(3) plainly indicates an intent to impose strict liability, the majority purports to follow the approach outlined in *State v. Wac* (1981), 68 Ohio St.2d 84, 22 O.O.3d 299, 428 N.E.2d 428, and *State v. Maxwell*, 95 Ohio St.3d 254, 2002-Ohio-2121, 767 N.E.2d 242. But the majority overextends the holdings of those cases so as to contradict the language of R.C. 2901.21(B). Although we have stated in *Maxwell*, at ¶ 22, that we must consider sections rather than divisions to see whether R.C. 2901.21(B) can operate to supply the mental element of recklessness, the statute tells us that we must examine "the section *defining an offense*" to determine whether that definition "plainly indicates a purpose to impose strict criminal liability for the *conduct described* in the section." (Emphasis added.) R.C. 2901.21(B). The majority concludes that, regardless of the context, a single reference to a mental state (knowingly, in R.C. 2911.01(B)) automatically indicates a purpose to impose strict liability in R.C. 2911.01(A)(3), which does not explicitly name a mental state.

{¶ 60} The first two divisions in R.C. 2911.01, however, relate to two different courses of conduct: (A) refers to attempting, committing, or fleeing after a theft offense, while (B) concerns removing a deadly weapon from a law-enforcement officer. The majority's reading ignores the plain language of R.C. 2901.21(B), which states that we are to analyze the language *defining an offense* to determine whether that definition plainly indicates a purpose to impose strict liability for a particular course of *conduct*. Because the definition of the offense is found solely in R.C. 2911.01(A), the language of R.C. 2911.01(B) is inapplicable to the question of whether the General Assembly has plainly indicated a purpose to impose strict criminal liability for the offense defined in (A).

{¶ 61} This method of analysis is consistent with *Wac* and *Maxwell*. In those cases, we examined the definitions *of each offense*, just as R.C. 2901.21(B) requires, to determine whether the General Assembly plainly indicated a purpose to impose strict liability for the specific *conduct* involved. In analyzing R.C. 2915.02 in *Wac*, we looked only at the language in R.C. 2915.02(A)(1), which criminalizes bookmaking. Id., 68 Ohio St.2d at 86, 22 O.O.3d 299, 428 N.E.2d 428. In determining the proper mens rea, we did not consider the other, very different forms of conduct defined elsewhere in R.C. 2915.02, such as establishing, promoting, or operating a game of chance conducted for profit (R.C. 2915.02(A)(2)) or betting (R.C. 2915.02(A)(4)). By the same principle, our consideration of the proper mens rea for R.C. 2915.03 reflected the narrow focus of that statute, both divisions of which deal with the same conduct: using or occupying premises for gambling. Id. at 86-87.

{¶ 62} Similarly, in *Maxwell*, we examined only the language in R.C. 2907.321(A)(6), which defined the offense of bringing child pornography into the state. We ignored the other offenses defined in R.C. 2907.321, such as creating

child pornography (R.C. 2907.321(A)(1)) or buying, purchasing, possessing, or controlling child pornography (R.C. 2907.321(A)(5)).

{¶ 63} The mere lack of a mental state in R.C. 2911.01(A)(3) does not plainly indicate to me a purpose to impose strict criminal liability for the conduct of inflicting or attempting to inflict serious physical harm on another during the attempt or commission of a theft offense. At the very least, the state should be charged with proving that the conduct was reckless. "A person acts recklessly when, with heedless indifference to the consequences, he *perversely disregards a known risk* that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he *perversely disregards a known risk* that such circumstances are likely to exist." (Emphasis added.) R.C. 2901.22(C).

{¶ 64} We explained how the General Assembly shows an intent to dispense with a mens rea and impose strict liability in *State v. Lozier*, 101 Ohio St.3d 161, 2004-Ohio-732, 803 N.E.2d 770. Under R.C. 2925.03(C)(5)(b), the offense of trafficking in LSD is a fourth degree felony if committed "in the vicinity of a school or in the vicinity of a juvenile." To determine the correct mens rea for the "vicinity" element, we looked to R.C. 2925.01, which defines these phrases. Under R.C. 2925.01(BB), an offender is guilty of committing the offense in the vicinity of a juvenile "regardless of whether the offender knows the age of the juvenile, whether the offender knows the offense is being committed within one hundred feet of or within view of the juvenile, or whether the juvenile actually views the commission of the offense." We stated that this language "makes it abundantly clear that the offender's mental state is irrelevant in determining whether the offender has committed an offense 'in the vicinity of a juvenile.' " *Lozier* at ¶ 36. We then turned to the definition of "in the vicinity of a

school," as it then existed.[2]  We noted that, by contrast, an offender was guilty of committing the offense in the vicinity of a school if the offense is committed "on school premises, in a school building, or within one thousand feet of the boundaries of any school premises."  Former R.C. 2925.01(P), 149 Ohio Laws, Part V, 10175, 10187.  No mens rea appeared, and, unlike the "vicinity of a juvenile" definition, it had no language stating that the offender is guilty regardless of any knowledge on behalf of the offender.  Thus, the General Assembly had not indicated that trafficking in LSD in the vicinity of a school was a strict-liability offense, and the default mental state of recklessness applied.  *Lozier*, 101 Ohio St.3d 161, 803 N.E.2d 770, at ¶ 45.

{¶ 65} The majority also relies upon *State v. Lester*, 123 Ohio St.3d 396, 2009-Ohio-4225, 916 N.E.2d 1038, and *State v. Wharf* (1999), 86 Ohio St.3d 375, 715 N.E.2d 172, as support for its conclusion that R.C. 2911.01(A)(3) plainly indicates a purpose to impose strict liability.  *Wharf* examines the completely separate offense of robbery as defined in R.C. 2911.02(A)(1), and *Lester* examines the "deadly weapon" version of aggravated robbery under R.C. 2911.01.  Therefore, neither opinion is relevant to the issue of whether the General Assembly plainly indicated a purpose to impose strict liability in R.C. 2911.01(A)(3).

{¶ 66} Furthermore, *Lester* contradicts both *Lozier* and R.C. 2901.21(B) by holding that the lack of a mens rea in R.C. 2911.01(A)(1) plainly indicates a purpose to impose strict liability.  See *Lester*, 123 Ohio St.3d 396, 2009-Ohio-4225, 916 N.E.2d 1038, at ¶ 44-58 (Lanzinger, J., concurring in judgment only).

{¶ 67} Since the General Assembly has not specified a degree of culpability in its definition of the offense of inflicting or attempting to inflict

---

2. R.C. 2925.01(P) was amended shortly after *Lozier* was decided to add language similar to that in division (BB), making it explicit that the offender need not be aware that he is near a school to be guilty of the offense.

serious physical harm on another during the attempt or commission of a theft offense, I would take the General Assembly at its word and hold that the default mens rea of recklessness is applicable to R.C. 2911.01(A)(3). Thus, I respectfully dissent with respect to the portion of the majority opinion that concludes that aggravated robbery in violation of R.C. 2911.01(A)(3) is a strict-liability offense.

{¶ 68} Because the indictment in this case tracked the language of R.C. 2911.01(A)(3), which fails to specify a mental state, the indictment is not defective for failure to identify a mental state. I would hold that Horner was on notice that the default mens rea of recklessness applied under R.C. 2901.21(B) and would affirm the judgment of the court of appeals that the indictment was not defective. I therefore concur only in the judgment of the court and in the first and third syllabus paragraphs of the majority opinion.

—————————————

PFEIFER, J., dissenting.

{¶ 69} I agree with Justice Lanzinger's conclusion that R.C. 2901.21(B) imposes a mens rea of recklessness on R.C. 2911.01(A)(3). Had the majority so concluded, instead of determining that R.C. 2911.01(A)(3) is a strict-liability offense, the majority could have properly weighed in on the continued viability of this court's decisions in *State v. Colon*, 118 Ohio St.3d 26, 2008-Ohio-1624, 885 N.E.2d 917 ("*Colon I*"), and *State v. Colon*, 119 Ohio St.3d 204, 2008-Ohio-3749, 893 N.E.2d 169 ("*Colon II*"). But *Colon I* and *Colon II* never applied to indictments for strict-liability offenses, i.e., offenses without a mens rea. If an offense lacks a mens rea, the indictment for that offense cannot be faulty for failing to state a mens rea. The majority's strict-liability determination renders *Colon I* and *Colon II* inapplicable to this case, and the majority thus improperly overrules them.

{¶ 70} Had the majority found recklessness as the operative mens rea here, then *Colon I* and *Colon II* would have been fair game, since *Colon I* and

19

*Colon II* involved a situation in which R.C. 2901.21(B) imposed a mens rea of recklessness and the indictment failed to set forth that mens rea. Here, the majority overrules *Colon I* and *Colon II* even before determining whether they are applicable. You can overrule the *Colon* cases *or* you can find strict liability for an R.C. 2911.01(A)(3) offense, but you cannot do both in this case.

_____

Julia R. Bates, Lucas County Prosecuting Attorney, and David F. Cooper, Assistant Prosecuting Attorney, for appellee.

John F. Potts, for appellant.

Ron O'Brien, Franklin County Prosecuting Attorney, and Steven L. Taylor, Assistant Prosecuting Attorney, urging affirmance for amicus curiae Franklin County Prosecutor.

Timothy Young, Ohio Public Defender, and Spencer Cahoon, Assistant Public Defender, urging reversal for amicus curiae Ohio Public Defender.

_____