**The STATE of Ohio,**

v.

**ICON ENTERTAINMENT GROUP, INC.**

2010-Ohio-5719.]

Franklin County Municipal Court,
Columbus Ohio.

Nos. 2009 CRB 030175 and 2010 CRB 004041.

Decided Sept. 23, 2010.

Orly Ahroni, for plaintiff.

Berkman, Gordon, Murray, & DeVan, J. Michael Murray, and Lindsey T. Renninger, for defendant.

MICHAEL T. BRANDT, Judge.

## I. Introduction

{¶ 1} These two cases are before the court on the motions of the defendant, Icon Entertainment Group, Inc., to dismiss the complaints on the grounds that they fail to state an offense and are premised upon a statute that is unconstitutionally vague on its face. For the reasons set forth below, these motions are denied.

{¶ 2} In these cases, the defendant is charged with two counts of illegally operating a sexually oriented business in violation of R.C. 2907.40(B). R.C. 2907.40(B) states:

No sexually oriented business shall be or remain open for business between 12:00 midnight and 6:00 a.m. on any day, except that a sexually oriented business that holds a liquor permit pursuant to Chapter 4303 of the Revised Code may remain open until the hour specified in that permit if it does not conduct, offer, or allow sexually oriented entertainment activity in which the performers appear nude.

"Nude" is a defined term that means "the showing of the human male or female genitals, pubic area, vulva, anus, anal cleft, or cleavage with less than a fully opaque covering; or the showing of the female breasts with less than a fully opaque covering of any part of the nipple." R.C. 2907.39(A)(10). The complaints allege that topless female dancers performed at defendant's Kahoots Gentlemen's Club between 12:00 a.m. and 6:00 a.m. on October 22, 2008, and November 14, 2009.

{¶ 3} The defendant has moved to dismiss both complaints on two grounds. First, the defendant argues that the complaints are deficient in that they do not allege that defendant acted with recklessness. Second, the defendant argues that R.C. 2907.40(B) is unconstitutionally vague on its face. The state opposes these arguments by maintaining that the legislature deliberately created a strict-liability offense in R.C. 2907.40(B) and that the statute is not unconstitutionally vague.

## II. Law and Analysis

### A. R.C. 2907.40(B) Plainly Indicates an Intent to Impose Strict Liability

{¶ 4} R.C. 2907.40(B) does not specify a culpable mental state for the offense. R.C. 2901.21(B) states:

> When the section defining an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in the section, then culpability is not required for a person to be guilty of the offense. When the section neither specifies culpability nor plainly indicates a purpose to impose strict liability, recklessness is sufficient culpability to commit the offense.

In *State v. Wac* (1981), 68 Ohio St.2d 84, 22 O.O.3d 299, 428 N.E.2d 428, the Ohio Supreme Court considered the mental state required by a statute criminalizing both bookmaking and facilitating bookmaking. In that statute, the legislature included the mental state of "knowingly" for the offense of facilitating bookmaking, but specified no mental state for the offense of bookmaking. Id. at 86. The Supreme Court held that the exclusion of any mental state for bookmaking, in light of the inclusion of a mental state for *facilitating* bookmaking in the same statute, plainly indicated a purpose to impose strict liability for bookmaking. Id. Likewise, the inclusion of the mental state of recklessness for *permitting* the use of premises for gambling and the exclusion of a mental state for *using* premises for gambling was held to have plainly indicated a purpose to impose strict liability for the latter offense. Id. at 87.

{¶ 5} Similarly, in *State v. Maxwell*, 95 Ohio St.3d 254, 2002-Ohio-2121, 767 N.E.2d 242, the Ohio Supreme Court again held that the General Assembly plainly indicated a purpose to impose strict liability when it explicitly set forth a mental state in one part of a statutory section defining a criminal offense, but not in another. In *Maxwell*, a defendant who had downloaded obscene images involving minors onto his computer argued that although he knew that the images were obscene and involved minors, he did not know that he was downloading them from a computer system in another state, which resulted in his importing the images into Ohio. The court held that based upon the language in the statute, the knowledge element of R.C. 2907.321(A) applied only to "the character of the material or performance involved," and the absence of any knowledge requirement relating to actual importing of the material evidenced a plain intention to impose strict liability for that act. Id. at ¶ 30. This interpretation was supported by the General Assembly's demonstrated history of assuming a "strong stance" against sex-related acts involving minors. Id.

{¶ 6} Like the statutes at issue in *Wac* and *Maxwell*, R.C. 2907.40 sets forth different discrete offenses. The one at issue in this case, in division (B), prohibits

sexually oriented businesses from having "sexually oriented entertainment activity in which the performers appear nude" after a certain time. R.C. 2907.40(B). The other discrete offenses under R.C. 2907.40(C) occur only when nude or seminude employees "knowingly touch" one another or when patrons "knowingly touch" those employees. R.C. 2907.40(C)(1) and (2). This court concludes that the omission of any mental state in R.C. 2907.40(B), a division in the immediate proximity of R.C. 2907.40(C), which includes mental states that the state must prove, sufficiently establishes that the General Assembly deliberately intended that a sexually oriented business conducting, offering, or allowing nude entertainment after midnight be held strictly liable for that conduct. Just like in *Maxwell,* this conclusion is supported by the General Assembly's demonstrated history— which will be discussed at more length in the next section of this decision—of legislating to protect individuals and society at large from the social harms associated with the operation of sexually oriented businesses.[1]

{¶ 7} Accordingly, the court finds that R.C. 2907.40(B) states a strict-liability offense pursuant to R.C. 2901.21(B).

### B. Strict Liability Under R.C. 2907.40(B) Is Constitutionally Permissible Under the First Amendment

■ {¶ 8} Although not raised as grounds for dismissal in its motions to dismiss, the defendant in its memoranda urges the court to find that the First Amendment to the Constitution of the United States and Section 11, Article I of the Ohio Constitution prohibit the imposition of strict liability for speech-related offenses.[2] The defendant bases this argument on cases like *Smith v. California* (1959), 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205, *Hamling v. United States* (1974), 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590, and *Threesome Entertainment v. Strittmather* (N.D.Ohio, 1998), 4 F.Supp.2d 710, but these cases establish no

---

1. In reaching this conclusion, this court is mindful of *State v. Lozier,* 101 Ohio St.3d 161, 2004-Ohio-732, 803 N.E.2d 770, in which the Ohio Supreme Court did not find that the General Assembly plainly intended that there be strict liability when an offender sells L.S.D. in the vicinity of a school, where the statute was silent as to whether the offender needed to be aware that a school was nearby. But in that case there was a similar offense of selling L.S.D. in the vicinity of a juvenile that *expressly* created strict liability by imposing liability for that conduct "regardless of whether the offender knows the age of the juvenile." Id. at 165, 2004-Ohio-732, 803 N.E.2d 770. That is simply not the case here. This case presents the exact opposite situation: the General Assembly has created an offense with no express mental state in R.C. 2907.40(B) right next to offenses in R.C. 2907.40(C) that explicitly require the state to establish "knowingness" as elements of those crimes.

2. The Supreme Court of Ohio has held that "the free speech guarantees accorded by the Ohio Constitution are no broader than the First Amendment," and "the First Amendment is the proper basis for interpretation of Section 11, Article I." *Eastwood Mall v. Slanco* (1994), 68 Ohio St.3d 221, 222, 626 N.E.2d 59.

blanket prohibition on statutes that impose strict liability when expressive conduct is involved. Instead, the courts in those cases simply examined whether the laws at issue punished or prohibited more speech than necessary to fulfill the legitimate governmental interests in regulating the conduct involved.

{¶ 9} In *Smith*, the Supreme Court of the United States considered the appeal of a bookseller convicted under a Los Angeles obscenity ordinance that imposed strict liability for possessing obscene writings or books "in any place of business where * * * books * * * are sold or kept for sale." *Smith*, 361 U.S. at 148, 80 S.Ct. 215, 4 L.Ed.2d 205. Noting that strict liability would result in booksellers limiting their inventory to only those books that they personally verified lacked obscene content, the court held that the ordinance had "such a tendency to inhibit constitutionally protected expression that it cannot stand under the Constitution." Id. at 155. Similarly, in *Strittmather*, the United States District Court for the Northern District of Ohio considered a challenge to a municipal ordinance that imposed strict liability where a seminude dancer in an adult cabaret made physical contact with another employee or with a patron of the cabaret. *Strittmather*, 4 F.Supp.2d at 722. Observing that in the absence of a mental-state requirement, the ordinance would criminalize even handshakes, inadvertent touching, or the handing over of money, the court found that the imposition of strict liability violated the First Amendment because it burdened more protected expression than necessary to further the government's legitimate interests in mitigating the social ills that can accompany adult entertainment businesses. Id. at 722. The *Hamling* court addressed scienter requirements more generally in relation to the First Amendment. The court reviewed several cases dealing with speech-related offenses and emphasized that the purpose of scienter for speech-related offenses is "to avoid the hazard of self-censorship of constitutionally protected material and to compensate for the ambiguities inherent in the definition of obscenity." *Hamling*, 418 U.S. at 123, 94 S.Ct. 2887, 41 L.Ed.2d 590.

{¶ 10} It cannot be denied that nude or erotic dancing is expressive conduct that can fall within the category of speech protected by the First Amendment. *Erie v. Pap's A.M.* (2000), 529 U.S. 277, 289, 120 S.Ct. 1382, 146 L.Ed.2d 265. Any regulation of nude dancing, therefore, must comply with the applicable First Amendment standards. To determine what level of scrutiny the court must apply to the statute at issue here, the court must first decide whether R.C. 2907.40(B) is aimed at suppressing expression or if the purpose is "unrelated to the suppression of expression," which would make it "content-neutral." Id. If the government interest is in suppressing expression, then the court must scrutinize the statute under a "demanding standard," but if the government interest is otherwise, then the court must apply the less exacting four-part test

from *United States v. O'Brien* (1968), 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672. Id.

{¶ 11} R.C. 2907.40 does not contain a statement of purpose or intent. On its face, the statute appears only to address "sexually oriented entertainment activity in which the performers appear nude." R.C. 2907.40(B). However, a statement of purpose is not necessary in all cases to establish that the purpose of a regulation pertaining to erotic dance is unrelated to the suppression of expression. Such regulations can also be justified by evidence that the lawmakers considered the "negative secondary effects" of adult entertainment business, such as increases in prostitution, crime, or disease. *Renton v. Playtime Theatres, Inc.* (1986), 475 U.S. 41, 50–52, 106 S.Ct. 925, 89 L.Ed.2d 29; *Pap's A.M.*, 529 U.S. at 293, 120 S.Ct. 1382, 146 L.Ed.2d 265. The secondary-effects evidence does not need to be specific to the jurisdiction in which the law is enacted. *Renton* at 52. Indeed, "all that is needed to justify [such] a regulation is reasonable belief that it will help ameliorate such secondary effects." *Déjà Vu of Nashville, Inc. v. Metro. Govt. of Nashville & Davidson Cty.* (C.A.6, 2006), 466 F.3d 391, 398.

{¶ 12} As evidence that R.C. 2907.40 is a content-neutral regulation aimed at ameliorating secondary effects, the state directs this court's attention to *84 Video/Newsstand, Inc. v. Sartini* (N.D.Ohio 2009), No. 1:07 CV 03190, 2007 WL 3047207. In that case, three groups of plaintiffs, including Ohio businesses that present nude or seminude performances and an adult cabaret trade group, challenged the constitutionality of R.C. 2907.40, including the section at issue in this case. Id. at *2. In response, the state presented substantial anecdotal and empirical evidence concerning the adverse secondary effects attendant to adult businesses that the General Assembly considered during the legislative process. This included anecdotal evidence of secondary effects from around Ohio, studies and reports on secondary effects from Ohio and cities in Arizona, California, Colorado, Indiana, Kentucky, Minnesota, New York, North Carolina, Oklahoma, Texas, Washington, and Wisconsin, judicial opinions from the United States Courts of Appeals, and testimony from proponents and opponents of the bill. In uncodified law justifying, inter alia, the expansion of local authority to regulate adult businesses passed in 2006, the General Assembly found that "adult entertainment establishments are frequently used for unlawful sexual activities, including prostitution and sexual liaisons of a casual nature[, that the] concern over sexually transmitted diseases is a legitimate health concern of this state that demands reasonable regulation of adult entertainment establishments by the state [and] local governments in order to protect the health and well-being of the citizens[, and that] there is convincing documented evidence that adult entertainment establishments, because of their very nature, have a deleterious effect on

both the existing businesses around them and the surrounding residential areas adjacent to them and cause increased crime, particularly in the overnight hours, and the downgrading of property values." Although the findings of the federal district court are not binding, this court agrees that the General Assembly's reliance upon such adverse secondary effects is sufficient to demonstrate that R.C. 2907.40(B) was enacted with the intent to mitigate the adverse secondary effects of adult businesses and was enacted with a reasonable belief that the law would do so. Since R.C. 2907.40(B) is content neutral, this court concludes—as the federal district court concluded in *Sartini*—that it is required to apply the four-step analysis set forth in *O'Brien* determine whether the law is valid in light of the First Amendment.[3]

{¶ 13} Under the *O'Brien* test, a law survives constitutional challenge when (1) it is within the government's constitutional power, (2) it furthers an important or substantial government interest, (3) the asserted governmental interest is unrelated to the suppression of free expression, and (4) any incidental restrictions on alleged First Amendment freedoms are no greater than essential. *O'Brien*, 391 U.S. at 376–377, 88 S.Ct. 1673, 20 L.Ed.2d 672. The third prong of the test is addressed by the preceding analysis; the government's interest in mitigating the adverse secondary effects of adult businesses is unrelated to the suppression of free expression. The first two prongs of the test are also met. As the United States Supreme Court found in *Pap's A.M.*, regulations on erotic dancing that are aimed at mitigating the adverse secondary effects of adult businesses are within a state's police power and further an "undeniably important" interest. *Pap's A.M.*, 529 U.S. at 296, 120 S.Ct. 1382, 146 L.Ed.2d 265.

{¶ 14} Therefore, the issue in this case, just as in Smith, Hamling, and Strittmather, is whether the law restricts more expression than necessary to further the government's legitimate interest. That test does not require the government to employ the least restrictive means, but requires only that the law be narrowly tailored. *Ward v. Rock Against Racism* (1989), 491 U.S. 781, 798, 109 S.Ct. 2746, 105 L.Ed.2d 661; *Barnes v. Glen Theatre* (1991), 501 U.S. 560, 572, 111 S.Ct. 2456, 115 L.Ed.2d 504. "[N]arrow tailoring is satisfied so long as the regulation promotes a substantial governmental interest that would be achieved less effectively absent the regulation," and any resulting burden on expression is not substantially broader than necessary. *Ward* at 782–783. The

---

**3.** It is worth noting that the 6th Circuit Court of Appeals applies the *O'Brien* test to all such laws. *Sensations, Inc. v. Grand Rapids* (C.A.6, 2008), 526 F.3d 291, 298 ("[I]n accordance with Supreme Court precedent, the Sixth Circuit treats laws * * * which regulate adult-entertainment businesses, as if they were content neutral"). Although not binding on this court, Sixth Circuit decisions on questions of federal law are persuasive. *State v. Burnett* (2001), 93 Ohio St.3d 419, 424, 755 N.E.2d 857.

Supreme Court has also noted that a "regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative." Id. at 800.

{¶ 15} The defendant argues that imposing strict liability under R.C. 2907.40(B) would be unconstitutional because it would suppress expression by imposing criminal liability on owners of adult businesses even if the "adult oriented entertainment activity" or nudity was against the express policy of the business or the owner did not know, authorize, or ratify the conduct. As one hypothetical example, defendant suggests that the law would have imposed criminal liability on the owners of Reliant Stadium for the infamous Janet Jackson–Justin Timberlake "wardrobe malfunction" during Super Bowl XXXVI-II. As another, defendant suggests that the business owner would be liable under the statute for the acts of a female patron who decides to cavort topless in the business after midnight without the knowledge or consent of the business.

{¶ 16} Those conclusions are belied by the language of the statute. By its terms, R.C. 2907.40(B) imposes liability only on those establishments that "conduct, offer, or allow sexually oriented entertainment activity in which the performers appear nude." Neither of the hypothetical situations posed by the defendant would create liability under the statute. In the first instance, Reliant Stadium is not a "sexually oriented business" under the statute, as it is not "an adult bookstore, adult video store, adult cabaret, adult motion picture theater, sexual device shop, or sexual encounter center." R.C. 2907.40(A)(15). In fact, the Reliant Stadium example is illustrative of R.C. 2907.40's narrow tailoring. By restricting the statute to operate only against the narrow category of "sexually oriented business" defined in the statute, the General Assembly confined the scope of the law to establishments of the kind considered in the secondary-effects testimony and reports. In the second instance, it would be unreasonable to conclude, without more, that an adult-business owner "conduct[ed], offer[ed], or allow[ed]" the topless cavorting of a patron. It is also highly questionable whether the patron could properly be considered a "performer" under the statute. The second example also demonstrates narrow tailoring—the statute does not restrict the expression of persons who are not actually or constructively connected with the sexually oriented business.

{¶ 17} Finally, the statute demonstrates narrow tailoring in another way: it does not regulate the erotic expression of performers who do not appear nude. As the United States Supreme Court has recognized, the overall effect on erotic expression of prohibiting nudity is de minimis. Pap's A.M., 529 U.S. at 294, 120 S.Ct. 1382, 146 L.Ed.2d 265.

{¶ 18} Accordingly, the court finds that R.C. 2907.40(B) violates neither the First Amendment to the Constitution of the United States nor Section 11, Article

I of the Ohio Constitution. The statute promotes the government's substantial interest in mitigating the adverse secondary effects of adult businesses and any incidental restriction on protected speech is no greater than necessary to meet this valid and content-neutral goal.

## C. R.C. 2907.40(B) Is Not Unconstitutionally Void for Vagueness on its Face

{¶ 19} Defendant also moves to dismiss the complaints in these cases on the grounds that R.C. 2907.40(B) is unconstitutionally vague. A vagueness challenge is rooted in due process, and due process prohibits a statute that "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden." *United States v. Harriss* (1954), 347 U.S. 612, 617, 74 S.Ct. 808, 98 L.Ed. 989. "In order to survive a void-for-vagueness challenge, the statute at issue must be written so that a person of common intelligence is able to determine what conduct is prohibited, and the statute must provide sufficient standards to prevent arbitrary and discriminatory enforcement." *State v. Williams* (2000), 88 Ohio St.3d 513, 532, 728 N.E.2d 342, citing *Chicago v. Morales* (1999), 527 U.S. 41, 56–57, 119 S.Ct. 1849, 144 L.Ed.2d 67. Due process, however, makes allowances for the limitations of language; it recognizes that "[m]any statutes will have some inherent vagueness * * *." *Rose v. Locke* (1975), 423 U.S. 48, 49–50, 96 S.Ct. 243, 46 L.Ed.2d 185. Due process does not require that the legislature define every word or phrase that appears in a statute. *State ex rel. Rear Door Bookstore v. Tenth Dist. Court of Appeals* (1992), 63 Ohio St.3d 354, 358, 588 N.E.2d 116. If words in the statute are undefined, they are to be "given the meaning commonly attributed to them." Id.

{¶ 20} In its motions to dismiss, the defendant has decided to present facial-vagueness challenges, rather than to challenge R.C. 2907.40(B) as applied to the defendant's conduct. An "as-applied" challenge asserts that a statute is unconstitutional as applied to that challenger's specific conduct. See, e.g., *Columbus v. Meyer,* 152 Ohio App.3d 46, 2003-Ohio-1270, 786 N.E.2d 521, ¶ 31. Indeed, the defendant has admitted to no specific facts or conduct to which R.C. 2907.40(B) could be applied in order to analyze whether it is vague "as-applied." Instead, defendant asserts that R.C. 2907.40(B) is unconstitutionally vague on its face.

{¶ 21} This court will assume for the sake of argument that the defendant has standing to assert a facial challenge to R.C. 2907.40(B) in this case. Although in the preceding section this court held that R.C. 2907.40(B) is not overbroad in violation of the First Amendment, it does recognize that the United States Supreme Court has held it permissible for a party to attack a statute with a facial due-process challenge outside the context of a First Amendment over-

breadth analysis.  See *Chicago v. Morales,* 527 U.S. at 56–57, 119 S.Ct. 1849, 144 L.Ed.2d 67.  Just the same, invalidating a statute on a facial challenge is extremely difficult because a facial challenge is a claim that a statute is "invalid in toto—and therefore incapable of any valid application." *Steffel v. Thompson* (1974), 415 U.S. 452, 474, 94 S.Ct. 1209, 39 L.Ed.2d 505.  "[F]acial challenges to legislation are generally disfavored." *FW/PBS, Inc. v. Dallas* (1990), 493 U.S. 215, 223, 110 S.Ct. 596, 107 L.Ed.2d 603.  The United States Supreme Court has stated that facial invalidation is to be used "sparingly and only as a last resort." *Natl. Endowment for the Arts v. Finley* (1998), 524 U.S. 569, 580, 118 S.Ct. 2168, 141 L.Ed.2d 500.  Likewise, the Supreme Court has said that facial invalidation is appropriate only when "no standard of conduct is specified at all," *Coates v. Cincinnati* (1971), 402 U.S. 611, 614, 91 S.Ct. 1686, 29 L.Ed.2d 214, and when the "statute may not constitutionally be applied to any set of facts," *United States v. Powell* (1975), 423 U.S. 87, 92, 96 S.Ct. 316, 46 L.Ed.2d 228.  But if instead "a statute has a core meaning that can reasonably be understood, then it may validly be applied to conduct within the core meaning, and the possibility of such a valid application necessarily means that statute is not vague on its face." *Brache v. Westchester Cty.* (C.A.2, 1981), 658 F.2d 47, 51.

{¶ 22} In its assailment on the language of R.C. 2907.40(B), the defendant focuses on the phrase "sexually oriented entertainment activity."  That phrase is not defined in R.C. 2907.40(A), nor is it defined elsewhere in the Revised Code.  Defendant maintains that this lack of a statutory definition makes it impossible to guess what the statute prohibits.  For example, it maintains that it is not possible to know if the statute applies in a case where a business permits performers to walk around in a state of nudity or presents a serious monologue in which the performer appears nude.  The state argues that "sexually oriented" should clearly be understood in refers to the statutorily defined term "sexually oriented business" and refers to an adult cabaret.  It also refers to the dictionary definitions of the words "entertainment" and "activity."  Under the state's construction, "sexually oriented entertainment activity" would refer to nude performances in an adult cabaret.

{¶ 23} Although the entire phrase "sexually oriented entertainment activity" is not statutorily defined, that does not mean that a person of common intelligence cannot determine what conduct is forbidden.  Nor does this, standing alone, somehow empower law enforcement to enforce the law in some random, arbitrary, or discriminatory way.

{¶ 24} From the statute itself, two definitions are clear.  "Nude" and "sexually oriented business" are both defined terms.  "Nude" is defined by reference to R.C. 2907.39 and is "the showing of the human male or female genitals, pubic area, vulva, anus, anal cleft, or cleavage with less than a fully opaque covering;  or

the showing of the female breasts with less than a fully opaque covering of any part of the nipple." A "sexually oriented business" is "an adult bookstore, adult video store, adult cabaret, adult motion picture theater, sexual device shop, or sexual encounter center," each of which is defined in the statute. Therefore, persons of common intelligence are on notice that the prohibition in R.C. 2940.07(B) applies to certain businesses after midnight when someone appears who is displaying unclothed any of the specified anatomical parts.

{¶ 25} The important phrases remaining are "sexually oriented," "entertainment activity," "conduct, offer, or allow," and "performer." These terms have commonly understood meanings. With respect to the phrase "sexually oriented," this is commonly understood to refer to that which is directed at or concerning sex, sex-related activities, sexual organs, or an interest in sex. See Webster's Unabridged Dictionary (2d Ed.1998) 1365 and 1755. A "performer" is one who acts, sings, dances, or engages in another form of expressive activity, usually in front of an audience. Id. at 1439. To "conduct, offer, or allow" a performance is to provide a venue for, participate in, or permit another the use of one's facility for that performance. Id. at 57, 426, and 1344. And "entertainment activity" can be plainly understood as a course of conduct aimed at or carried on with the purpose of providing enjoyment or a spectacle. Id. at 20 and 648. Based on the common meaning of these terms, a person of reasonable intelligence would necessarily conclude that R.C. 2907.40(B) applies when one of the specified types of businesses acts as a venue for a person engaging in expressive activity as part of a course of conduct aimed at providing enjoyment or spectacle and when one or more of the people involved in the expressive activity shows any of the statutorily specified anatomical parts.

{¶ 26} Placing these understandable terms in their statutory context provides even greater guidance. It is impossible but to conclude that since defendant *is* a "sexually oriented" business known as an adult cabaret *because* it features performances in which the performers display any of the statutorily specified anatomical parts discussed above, those performances *must themselves* be "sexually oriented" in nature, for without them, defendant would be neither an adult cabaret nor a "sexually oriented" business under Ohio law. See R.C. 2907.39(A)(3) and (A)(10); R.C. 2907.40(B); see also *Commerce & Industry Ins. Co. v. Toledo* (1989), 45 Ohio St.3d 96, 102, 543 N.E.2d 1188 ("words and phrases [in a statute] shall be read in context"); R.C. 1.42 and 1.47. From there, the only reasonable reading of R.C. 2907.40(B) is that it would, at the very least, prohibit such an adult cabaret from featuring any such sexually oriented performances of which it is a purveyor after midnight. Since that conduct would fall well within what can reasonably be understood as the core meaning of R.C. 2907.40(B), then R.C. 2907.40(B) may validly be applied to prohibit that conduct. And since there

is a valid application of the statute under those circumstances, it is impossible to conclude that R.C. 2907.40(B) is vague on its face. See, e.g., *Brache*, 658 F.2d at 51.

{¶ 27} It is not necessary that we examine all manner of hypothetical scenarios to try to find one where the application of R.C. 2907.40(B) is unclear. Interesting hypothetical situations aside, defendant's facial challenge to R.C. 2907.40(B) must fail because, as discussed above, facial invalidation is an extreme remedy that is appropriate only when a law is unconstitutionally vague in all applications. See *Coates*, 402 U.S. at 614, 91 S.Ct. 1686, 29 L.Ed.2d 214; *Powell*, 423 U.S. at 92, 96 S.Ct. 316, 46 L.Ed.2d 228. When there is a core meaning that is understandable to a person of common intelligence—as there is in this case—the law must withstand a facial challenge, regardless of how unclear the application of that law might be in the most extreme and vexing hypothetical situations the mind might concoct.[4]

{¶ 28} Accordingly, the court finds that R.C. 2907.40(B) is not unconstitutionally vague on its face.

## III. Conclusion

{¶ 29} Based on the foregoing, the defendant's motions to dismiss are denied.

Motions denied.

---

4. This court makes one final observation, and that is that the allegations in the criminal complaints in these cases—that defendant had topless female dancers performing after midnight on October 22, 2008, and again on November 14, 2009—sound a lot more like the activity that the core meaning of R.C. 2907.40(B) prohibits, rather than like the imaginary scenarios that defendant urges this court to entertain. If this case had involved an as-applied vagueness challenge to R.C. 2907.40(B), and if the criminal complaints accurately reflect the events on October 22, 2008, and November 14, 2009, such a challenge would almost certainly have failed, since R.C. 2907.40(B)—as the court has discussed at length—plainly prohibits an adult cabaret from featuring topless female dancers performing after midnight.