[Cite as *Veterans & Fraternal Charitable Coalition v. DeWine*, 2018-Ohio-4679.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The Ohio Veterans & Fraternal Charitable Coalition et al., | : | |
| | : | |
| Plaintiffs-Appellants, | | No. 18AP-199 |
| | : | (C.P.C. No. 13CV-13610) |
| v. | | |
| | : | (REGULAR CALENDAR) |
| Mike DeWine, Attorney General of Ohio, et al., | : | |
| | | |
| Defendants-Appellees. | : | |

## D E C I S I O N

### Rendered on November 20, 2018

**On brief:** *Crabbe, Brown & James, LLP, Andrew G. Douglas, Larry H. James,* and *Christopher R. Green*, for appellants. **Argued:** *Andrew G. Douglas.*

**On brief:** *Mike DeWine*, Attorney General, *Matthew T. Green,* and *C. Patrick Denier*, for appellee Attorney General of Ohio. **Argued:** *Matthew T. Green.*

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Plaintiffs-appellants, The Ohio Veterans & Fraternal Charitable Coalition ("OVFCC"), Veterans of Foreign Wars of Ohio Charities ("VFW Charities"), American Legion Department of Ohio Charities, Inc. ("American Legion Charities"), and Eichar-De Curtins Post No. 5713, Veterans of Foreign Wars of the United States ("VFW Post 7513"), appeal from a decision and entry of the Franklin County Court of Common Pleas granting the motion for summary judgment of defendant-appellee, Mike DeWine, Attorney General

of Ohio, and denying appellants' motion for summary judgment on their claims for declaratory judgment and injunctive relief.  For the following reasons, we affirm.

## I.  Procedural History

{¶ 2}  On December 19, 2013, appellants, all charitable organizations in Ohio, filed a complaint seeking declaratory judgment and injunctive relief against the attorney general and the Ohio Liquor Control Commission ("LCC").  Specifically, appellants sought a determination of whether their Electronic Raffle Machines ("ERMs") are raffles within the meaning of R.C. 2915.092(A) and an injunction restraining the attorney general and the LCC from taking any civil, criminal, or administrative action against them for use of the ERMs.  Appellants contemporaneously filed a motion for a temporary restraining order ("TRO").  That same day, the trial court issued a TRO in favor of appellants, restraining the attorney general and the LCC from taking any enforcement action with respect to the ERMs and/or any administrative action to revoke or suspend appellants' bingo licenses and liquor permits.  The trial court then amended the TRO on December 23, 2013 to indicate it would remain in effect until further order.

{¶ 3}  The attorney general filed an answer on January 22, 2014, and the LCC filed an answer on January 23, 2014.  Subsequently, on January 31, 2014, the attorney general filed a motion for judgment on the pleadings arguing he was entitled to judgment as a matter of law because appellants' ERMs are akin to "slot machines" within the meaning of R.C. 2915.01(C) and, thus, are prohibited "schemes of chance" under R.C. 2915.02(B).  The trial court denied the attorney general's motion for judgment on the pleadings, reasoning that because it must, at this stage, assume the factual allegations in the complaint are true, the trial court must consider the ERMs to be raffles conducted by licensed organizations for charitable purposes and therefore not prohibited by R.C. 2915.02.

{¶ 4}  On August 18, 2015, the attorney general filed a motion for summary judgment or, in the alternative, a motion for joinder of Charitable Management and Capital Group ("CMCG"), the supplier and owner of the ERMs used by appellants.  The attorney general argued in support of its motion for summary judgment that appellants' failure to name CMCG as a party deprived the trial court of subject-matter jurisdiction.  In a December 31, 2015 decision and entry, the trial court denied the attorney general's motion

for summary judgment and alternative motion for joinder, concluding CMCG is not a necessary party to the action.

{¶ 5}   Appellants then executed a settlement agreement with the LCC, filing the agreement with the court on July 12, 2016.  Pursuant to the terms of the settlement agreement, appellants voluntarily dismissed the LCC from the case with prejudice and the LCC agreed not to hold any hearings or move forward with any cases involving the ERMs until a final decision was reached in this case, all appeals exhausted, and the TRO dismissed.

{¶ 6}   On May 16, 2016, appellants and the attorney general each filed a motion for summary judgment.  The trial court informed the parties it would hear oral argument on the sole issue of whether the ERMs conduct a "raffle" within the meaning of R.C. 2915.01(CC).  On October 24, 2016, the trial court conducted a hearing on this sole issue.

{¶ 7}   Ultimately, the trial court granted the attorney general's motion for summary judgment, denied appellants' motion for summary judgment, and entered judgment in favor of the attorney general. The trial court concluded appellants' ERMs do not conduct a "raffle" as defined by R.C. 2915.01(CC) and, thus, appellants' use of the ERMs is not permissible under R.C. 2915.092(A).   The trial court journalized its decision in a February 23, 2018 decision and judgment entry.  Subsequently, the trial court granted appellants' motion to stay the judgment pending the exhaustion of all appeals of the February 23, 2018 decision.  Appellants timely appeal.

## II.  Statement of Facts

{¶ 8}   This case ultimately resolves to a question of statutory interpretation, and the material facts are not in dispute.  In 2011, the OVFCC and CMCG executed an Exclusive Agreement for the operation of ERMs on the premises of all participating members of the OVFCC.  Subsequently, in 2014, the OVFCC and CMCG amended the Exclusive Agreement to grant CMCG the exclusive right, for a period of five years, to install, maintain, and operate "charitable video raffle terminals" and "charitable video pull tab terminals or devices" upon the premises of participating members.  (Am. Exclusive Agreement.)  The amended agreement designates 60 percent of the net revenue from the "charitable video raffle terminals" to the OVFCC, while the remaining 40 percent of net revenue flows to CMCG.

{¶ 9} An OVFCC lodge patron choosing to play or use an ERM may either buy a ticket from an ERM gaming terminal or buy directly from a point of sale terminal. The ERMs accept currency in denominations of $1, $5, $10, and $20. Each entry/ticket costs $1, but patrons may purchase more than one entry/ticket.

{¶ 10} Most OVFCC lodges with ERMs have more than one gaming terminal. An ERMs' gaming terminal consists of a touch screen computer monitor, a computer hard drive, a bill accepter, and a printer. Each gaming terminal is connected to and communicates with a finite server which is a separate computer monitor and hard drive connected to a physical cash register. The finite server at each location then communicates, through the internet, with a central server under CMCG's control and physically located in Columbus, Ohio. The finite server controls a pool of one million entries, and each OVFCC member lodge with ERMs has its own one million-entry pool.

{¶ 11} The prizes, or outcomes, in the ERM tickets range from $0 to $1,199. Each OVFCC member lodge with ERMs has a single grand prize of $1,199. Before any patron purchases a ticket from one of the ERMs, the central server controlled by CMCG pre-designates an outcome or prize associated to each entry or ticket number through assignment by the computer software.

{¶ 12} When patrons play the ERMs at the OVFCC locations, the ERMs disburse entry/ticket numbers in sequential order, from one to one million, regardless of what prizes may have already been awarded. Thus, if a patron is the first player on a machine and purchases one ticket for $1, he or she will receive ticket number one. The ERMs do not disclose to patrons whether the grand prize in the pool of entries has already been awarded; rather, the ERMs continue to disburse all one million tickets.

{¶ 13} After a patron purchases an entry/ticket, the patrons choose how the ERMs reveal their outcome or prize. Patrons may choose either "reveal," which allows patrons to learn the outcome or prize immediately after purchase of a ticket, or play engage in "game play." (Ex. 2, Baron Dep.) If a patron chooses "game play," the patron chooses what kind of video game he or she wants to play to reveal the prize associated with the entry/ticket. Though the "game themes" differ from machine to machine, they generally include keno, poker, and spinning reel games.

{¶ 14} When a patron chooses a "game theme," the ERMs convert each $0.01 of a monetary purchase made in the raffle pool into one token of game play. Thus, for every $1.00 raffle entry/ticket purchased, a patron receives 100 tokens for game play. A patron's choosing and playing a "game theme" has no effect on the result of the predetermined prize or outcome associated with their ticket. Instead, the "game themes" are for entertainment purposes only.

## III. Assignments of Error

{¶ 15} Appellants assign the following errors for our review:

> [1.] The trial court erred in its interpretation of the definition of the term "raffle" as set forth in R.C. 2915.01(CC) and further amplified in R.C. 2915.092(A).

> [2.] The trial court erred in holding that because the General Assembly "...did not act to expressly permit electronic raffles when it could have..." Appellants' electronic raffle machines (ERMS) are prohibited. (Emphasis added.)

## IV. Standard of Review and Applicable Law

{¶ 16} An appellate court reviews summary judgment under a de novo standard. *Coventry Twp. v. Ecker*, 101 Ohio App.3d 38, 41 (9th Dist.1995); *Koos v. Cent. Ohio Cellular, Inc.*, 94 Ohio App.3d 579, 588 (8th Dist.1994). Summary judgment is appropriate only when the moving party demonstrates (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor. Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183 (1997).

{¶ 17} Pursuant to Civ.R. 56(C), the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating the absence of a material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). However, the moving party cannot discharge its initial burden under this rule with a conclusory assertion that the nonmoving party has no evidence to prove its case; the moving party must specifically point to evidence of the type listed in Civ.R. 56(C) affirmatively demonstrating that the nonmoving party has no evidence to support the

nonmoving party's claims.  *Id.*; *Vahila v. Hall*, 77 Ohio St.3d 421, 429 (1997).  Once the moving party discharges its initial burden, summary judgment is appropriate if the nonmoving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that a genuine issue exists for trial.  *Dresher* at 293; *Vahila* at 430; Civ.R. 56(E).

## V.  First and Second Assignments of Error – Statutory Interpretation

{¶ 18}  In their first assignment of error, appellants argue the trial court erred in its interpretation of the term "raffle" as used in R.C. 2915.01(CC).  In its second assignment of error, appellants argue the trial court erred in holding that appellants' use of the ERMs is prohibited.  Taken together, these assignments of error assert the trial court erred in its interpretation of R.C. 2915.01(CC).

{¶ 19}  Statutory interpretation is a question of law subject to de novo review.  *State v. Fraternal Order of Police of Ohio, Inc., Ohio Labor Council, Inc.*, 10th Dist. No.  16AP-457, 2017-Ohio-1382, ¶ 12, citing *Licking Hts. Local School Dist. Bd. of Edn. v. Reynoldsburg City School Dist. Bd. of Edn.*, 10th Dist. No. 12AP-579, 2013-Ohio-3211, ¶ 9.  A court's duty is to give effect to the words used in a statute, not to delete or insert words.  *State v. Maxwell*, 95 Ohio St.3d 254, 2002-Ohio-2121, ¶ 10.  "Where the language of a statute is plain and unambiguous and conveys a clear and definite meaning there is no occasion for resorting to rules of statutory interpretation.  An unambiguous statute is to be applied, not interpreted."  *Sears v. Weimer*, 143 Ohio St. 312 (1944), paragraph five of the syllabus.

{¶ 20}  In ascertaining the meaning of a statute, a court's paramount concern is legislative intent.  *State v. Jackson*, 102 Ohio St.3d 380, 2004-Ohio-3206, ¶ 34, citing *State ex rel. Asberry v. Payne*, 82 Ohio St.3d 44, 47 (1998).  "All statutes relating to the same general subject matter must be read in pari materia, and in construing these statutes in pari materia, this court must give them a reasonable construction so as to give proper force and effect to each and all of the statutes."  *State ex rel. Herman v. Klopfleisch*, 72 Ohio St.3d 581, 585 (1995), citing *United Tel. Co. of Ohio v. Limbach*, 71 Ohio St.3d 369, 372 (1994); *State ex rel. Cordray v. Midway Motor Sales, Inc.*, 122 Ohio St.3d 234, 2009-Ohio-2610, ¶ 25 (noting statutory provisions related to the same subject matter should be construed harmoniously unless they are irreconcilable).  "In reviewing a statute, a court cannot pick

out one sentence and disassociate it from the context, but must look to the four corners of the enactment to determine the intent of the enacting body." *State v. Wilson*, 77 Ohio St.3d 334, 336 (1997), citing *MacDonald v. Bernard*, 1 Ohio St.3d 85, 89 (1982).

{¶ 21} In Ohio, gambling is generally prohibited by statute. R.C. 2915.02. However, the General Assembly specifically allows for "gambling expressly permitted by law." R.C. 2915.02(C). Pursuant to R.C. 2915.092(A):

> (1) * * * a charitable organization * * * or a veteran's organization [or] fraternal organization * * * may conduct a raffle to raise money for the organization * * * and does not need a license to conduct bingo in order to conduct a raffle drawing that is not for profit.
>
> (2) If a charitable organization that is described in division (A)(1) of this section * * * conducts a raffle, the charitable organization shall distribute at least fifty per cent of the net profit from the raffle to a charitable purpose described in division (V) of section 2915.01 of the Revised Code * * *.

There is no dispute here that appellants are all "charitable organizations," "veteran's organizations," or "fraternal organizations" within the meaning of Ohio law.

{¶ 22} In turn, R.C. 2915.01(CC) defines "raffle." In pertinent part, R.C. 2915.01(CC) provides:

> "Raffle" means a form of bingo in which the one or more prizes are won by one or more persons who have purchased a raffle ticket. The one or more winners of the raffle are determined by drawing a ticket stub or other detachable section from a receptacle containing ticket stubs or detachable sections corresponding to all tickets sold for the raffle.

{¶ 23} As an initial matter, we agree with the trial court that R.C. 2915.092(A) and 2915.01(CC) are unambiguous. Pursuant to R.C. 2915.092(A), appellants may conduct a "raffle" without obtaining and maintaining a bingo license so long as at least 50 percent of the net profit from the "raffle" goes to a charitable purpose. As defined in R.C. 2915.01(CC), a "raffle" is a form of bingo where "one or more prizes are won by one or more persons who have purchased a raffle ticket," and the winners are determined by "drawing a ticket stub or other detachable section from a receptacle containing ticket stubs or detachable sections corresponding to all tickets sold for the raffle." Because we find these statutes to be

unambiguous, we need not interpret the statutes and instead must simply apply them as written. *Weimer* at paragraph five of the syllabus.

{¶ 24} Appellants argue their ERMs conduct raffles as contemplated in R.C. 2915.092. Thus, to be entitled to relief, appellants must demonstrate that the ERMs meet the definition of raffle as stated in R.C. 2915.01(CC). To determine whether appellants' ERMs meet the statutory definition of "raffle" contained in the Ohio Revised Code, we look to the plain language of R.C. 2915.01(CC) as well as the factual information of how the ERMs actually work.

{¶ 25} Appellants assert the trial court, in finding its ERMs to be prohibited by statute, applied a colloquial definition of "raffle" associated with purchasing physical tickets with detachable stubs. Instead, appellants urge this court to view the ERMs as a modern, digital version of what the trial court deemed a "traditional raffle" and to disregard the lack of physical, detachable tickets.

{¶ 26} We agree with appellants to the extent they argue that the fact that patrons enter the game solely through an electronic kiosk is not, by itself, a bar to the ERMs satisfying the statutory definition of "raffle." The lack of a physical ticket being placed into a physical receptacle does not automatically compel the conclusion that the ERMs run afoul of the definition of "raffle" contained in R.C. 2915.01(CC). Additionally, we agree with appellants that the object of its ERMs, namely to win a prize without skill or effort, is the same as the object of a "traditional raffle."

{¶ 27} Nonetheless, we are unable to conclude that appellants' ERMs conduct a "raffle" within the meaning of R.C. 2915.01(CC). In looking at the plain language of the statute, one of the defining characteristics of a "raffle" is the method by which a winner is determined. R.C. 2915.01(CC) expressly provides that, to qualify as a "raffle," the winners must be determined by "drawing a ticket stub or other detachable section from a receptacle containing ticket stubs or detachable sections *corresponding to all tickets sold for the raffle.*" (Emphasis added.) Pursuant to the plain language of R.C. 2915.01(CC), then, the winner of the raffle is not determined until a "drawing" is made from a pool of all tickets sold. The use of the term "drawing" suggests an element of randomness to the determination of the winner. Additionally, the "drawing" does not occur until there is a pool of all tickets actually sold. Stated another way, each individual ticket sold will carry

the same probability of being selected the winner and is equal to the total number of tickets actually sold. A patron's chances of holding the winning ticket is directly related to how many other people choose to purchase tickets.

{¶ 28} By contrast, appellants' ERMs utilize a software that predetermines which tickets will correspond to a winning prize before any tickets are sold. This software eliminates any element of randomness to the determination of the winner as would occur in a drawing of all tickets sold. Additionally, because the winning tickets are predetermined, patrons of the ERMs do not all have the same chance of winning. Instead, the ERMs predetermine the number of tickets to be sold and predetermines the number—and timing—of the winners. Because the winning tickets are predetermined, the game being conducted on the ERMs could continue even if all prizes for the raffle have already been distributed. There is nothing in the selection of the winning tickets by the ERMs software that even approximates a drawing at random from a pool of all tickets actually sold.

{¶ 29} For these reasons, we agree with the trial court that appellants' ERMs do not satisfy the definition of "raffle" contained in R.C. 2915.01(CC). We emphasize that it is not the fact that the ERMs use computer software to select the winner that is objectionable under the statute; rather, the critical distinction is the computer software's particular method of predetermining the winning tickets before any tickets are actually sold. Because we conclude the ERMs do not conduct a "raffle" within the meaning of R.C. 2915.01(CC), we are compelled to additionally conclude that appellants' use of the ERMs is not permissible under R.C. 2915.092(A). Thus, the trial court did not err in granting summary judgment in favor of the attorney general. Accordingly, we overrule appellants' first and second assignments of error.

## VI. Disposition

{¶ 30} Based on the foregoing reasons, the trial court did not err in its interpretation of R.C. 2915.01(CC). Having overruled appellants' two assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

KLATT and BRUNNER, JJ., concur.