[Cite as *Osborne v. Parkview Fed. Sav. Bank*, 2026-Ohio-260.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

RICHARD M. OSBORNE, ET AL.,              :

    Plaintiffs-Appellees,              :              Nos. 115067, 115068, and 105069

    v.              :

PARKVIEW FEDERAL SAVINGS
BANK, ET AL.,              :

                  :

    Defendants-Appellants.

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** January 29, 2026

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-14-822810

---

### *Appearances:*

Benesch, Friedlander, Coplan & Aronoff LLP, David R. Mayo, Vincent J. Michalec, Trevor Alexander, and Nicholas P. Lacey, *for appellee* Northeast Ohio Natural Gas Corporation.

Charles E. Coulson, Lake County Prosecuting Attorney, and Kelly A. Echols, Assistant Lake County Prosecuting Attorney, *for appellant* Lake County Treasurer.

Connie J. Lewandowski, Portage County Prosecuting Attorney, and Allison Blakemore Manayan, Portage County Assistant Prosecuting Attorney, *for appellant* Portage County Treasurer.

James R. Flaiz, Geauga County Prosecuting Attorney, and Kristen Rine, Assistant Prosecuting Attorney, *for appellant* Geauga County Treasurer.

MICHAEL JOHN RYAN, J.:

{¶ 1} The parties in this appeal were all nonparties in the trial court. The appellants are the treasurers of Geauga County, Lake County, and Portage County (collectively "the treasurers" or "the counties"), and they appeal from the trial court's March 28, 2025 judgment granting the motion of appellee Northeast Ohio Natural Gas Corporation ("NEO") to enforce the October 16, 2019 order granting the motion of the receiver in this case for approval of sale. After a thorough review of the pertinent facts and law, we affirm.

**Background Facts and Procedural History**

{¶ 2} In 2014, plaintiff Richard Osborne ("Osborne") and numerous other plaintiffs, including Orwell-Trumbull Pipeline Co., LLC ("OTP"; collectively "the Osborne parties"), initiated this action against Parkview Federal Savings Bank, now known as First National Bank of Pennsylvania ("FNBPA"). The complaint sought, among other things, declaratory judgment and injunctive relief relative to a loan agreement executed by FNBPA; the Osborne parties were guarantors on the loan, secured by their respective assets. In 2016, the trial court granted judgment in favor of FNBPA and against the Osborne parties.

{¶ 3} In September 2017, FNBPA filed a motion to appoint a receiver over the Osborne parties' subject secured assets. One of the assets was a 141-mile pipeline

owned by OTP; the pipeline runs through Geauga, Lake, and Portage Counties. The trial court granted the motion to appoint a receiver in October 2017. In November 2017, the trial court held a hearing for the purpose of establishing the terms of the receivership. Thereafter, the court issued an order naming the receiver and directing him "to take and have complete and exclusive possession, control, and custody of the Receivership Property." The order further directed the receiver "to sell the Receivership Property free and clear of all liens and encumbrances by private sale, private auction, public auction, or by any other method deemed appropriate by the Receiver, subject to Court approval, after notice and opportunity for a hearing." The order related to both personal and real property.

{¶ 4} In December 2017, the case was stayed because OTP filed a Chapter 11 bankruptcy action. A little over a week later, FNBPA, a creditor in the bankruptcy action, filed a motion to dismiss OTP's bankruptcy petition. In January 2018, a notice of a hearing from the bankruptcy court was served on the appellant counties via regular mail. In February 2018, the bankruptcy court granted FNBPA's motion and OTP's bankruptcy petition was dismissed.

{¶ 5} In January 2019, the receiver filed a motion for an order to sell OTP's assets, including the pipeline. In his motion, the receiver represented that, in addition to the parties or their counsel, service would be had on "all creditors identified as having claimed interests on or relating to the Receivership Property or their counsel." The certificate of service indicated that the motion "was filed electronically" and "[n]otice of this filing will be sent to all parties by operation of

the Court's electronic filing system. Parties may access this filing through the Court's system."

{¶ 6} The receiver found a buyer — appellee NEO — for the pipeline in August 2019, and at that time, filed a motion with the trial court to approve the sale and requested a hearing. The certificate of service indicated that service was effectuated on the parties through the court's electronic filing system. A hearing on the motion was held in September 2019, and the day after the hearing, the trial court issued an entry granting the motion and authorizing the receiver to sell OTP's assets, including the pipeline.

{¶ 7} In October 2019, the trial court issued findings of fact and conclusions of law, in which the court approved the sale of OTP's assets, including the sale of the pipeline. The trial court also adopted the purchase agreement entered into between OTP and NEO by and through the receiver.

{¶ 8} In December 2019, the receiver filed a motion seeking permission to make an interim disbursement of funds to FNBPA. The certificate of service appended to the motion indicated that the motion was served on the treasurers. An intervening plaintiff filed a brief in opposition to the receiver's motion.

{¶ 9} The trial court set a hearing for all pending motions. The hearing date was continued several times — including after March 2020, during the height of the Covid-19 pandemic — and was ultimately reset for videoconferencing.

{¶ 10} In February 2023, the intervening plaintiff who had filed an opposition to the receiver's motion seeking permission to make an interim

disbursement of funds withdrew its opposition. Thereafter, on February 27, 2023, the trial court granted the receiver's motion to make an interim distribution of funds.

{¶ 11} In May 2024, the Geauga County Treasurer filed a foreclosure action in the Geauga County Court of Common Pleas seeking to foreclose on the pipeline asset because of a tax delinquency. Geauga County alleged that at the time of the filing of its complaint, the tax delinquency in Geauga County, including penalties and interest, was approximately $12 million. The Lake and Portage County Treasurers filed answers and cross-claims in the action, claiming tax delinquencies on the pipeline as well. Lake County alleged that at the time of its filing it was due approximately $3.4 million and Portage County alleged that at the time of its filing it was due $386,319.87.

{¶ 12} In July 2024, NEO filed the subject motion to enforce the court's October 16, 2019 order granting the receiver's motion for approval of the OTP's assets. In the motion, NEO requested that the trial court enjoin the treasurers from foreclosing on the pipeline. The counties filed a joint brief in opposition to NEO's motion. With the exception of two filings — the January 2018 notice of hearing from the bankruptcy court and the receiver's December 2019 motion seeking permission to make an interim disbursement of funds to FNBPA — it was (and is) the treasurers' contention that they had no notice of any of the proceedings, and thus no ability to protect their interests in this case. In December 2024, the trial court held a hearing

on NEO's motion, and in March 2025, the trial court issued the judgment at issue in this appeal.

**The Trial Court's March 2025 Judgment**

{¶ 13} In its judgment, the trial court found that the two filings the counties received — the January 2018 notice from the bankruptcy court and the receiver's December 2019 motion for interim disbursement — constituted "actual notice of the Receivership, the assets at issue, and the sale of the assets in sufficient time to assert any purported claims in a timely manner. [The counties] failed to do so."

{¶ 14} The trial court further found that the pipeline was personal, not real, property and rejected the counties' claims that R.C. 323.11 and 323.47 applied. Rather, the trial court found that those statutes apply to liens upon land and real property, not personal property.

{¶ 15} The trial court found that any liens OTP incurred remained an obligation of OTP and would attach to real property owned by OTP. The court concluded that the October 16, 2019 sale of OTP's property to NEO was "free and clear [and] remains valid and enforceable against claims not previously asserted against the property at issue." Thus, "[a]ny lien incurred by OTP remains an obligation of OTP and attaches to real property owned by OTP."

**Assignments of Error**

**Geauga County Treasurer**

I.    The trial court erroneously concluded that the public utility tax lien did not attach to the personal property of OTP.

II. The trial court erroneously concluded that the personal property of OTP was sold to NEO free and clear of the public utility personal property tax lien.

III. A court of common pleas cannot vest a receiver with the power to take away statutory lien rights without the consent of lienholders and without due process.

IV. The Cuyahoga County Court lacked subject-matter jurisdiction to assert authority over the tax lien for public utility personal property tax assessments under R.C. 5727.23 and its judgment attempting to sell the assessed property free of the tax lien is therefore void.

V. The trial court lacked jurisdiction over the Appellant Counties, and said judgment sought to be enforced against Appellant Counties should be rendered void.

## Lake County Treasurer

I. The trial court erred in granting Non-Party Northeast Ohio Natural Gas Corp.'s motion to enforce the Court's October 16, 2019 Order Granting Receiver's Motion for Approval of Sale.

## Portage County Treasurer

I. The trial court erred as a matter of law in finding that R.C. 323.11 and 323.47(A) did not apply on the issue of non-dischargeable public utility taxes.

II. The trial court's judgment entry is void against appellant for lack of subject-matter jurisdiction over property beyond its territorial boundaries, namely property located in Portage County, and, thus was without authority to release taxes owed on said property.

III. The trial court's judgment entry is void against appellant for lack of personal jurisdiction.

IV. The trial court's judgment entry is void against appellant, in violation of his right to due process; such violation is tantamount to plain error.

V.   The trial court erred as a matter of law in failing to find that the order granting receiver's motion for approval of sale and the asset purchase agreement did not contemplate or include the release of delinquent taxes on the pipeline.

**Law and Analysis**

**Personal and Subject-Matter Jurisdiction; Venue**

{¶ 16} Geauga and Portage Counties contend that the trial court lacked personal and subject-matter jurisdiction over the property and the treasurers. Portage County further contends that even if the trial court properly exercised subject-matter jurisdiction, venue was improper.   Because jurisdiction is a threshold issue, we begin with it.  *See JP Morgan Chase v. Yoo*, 2025-Ohio-5519, ¶ 8 (8th Dist.).

{¶ 17}  "Before judgment can be entered against a party, the trial court must be vested with both personal and subject matter jurisdiction."  *Satava v. Gerhard*, 66 Ohio App.3d 598, 601 (11th Dist. 1990).

{¶ 18} Personal jurisdiction is a court's "'power to bring a person into its adjudicative process; jurisdiction over a defendant's personal rights, rather than merely over property interests.'" *Renacci v. Evans*, 2009-Ohio-5154, ¶ 6 (9th Dist.), quoting *Black's Law Dictionary* (8th Ed. 2004).  It is the power of a court to enter a valid judgment against a party in a lawsuit.  *Meadows v. Meadows*, 73 Ohio App.3d 316, 319 (3d Dist. 1992).  Whether a trial court has personal jurisdiction over a defendant is a matter of law that appellate courts review de novo.  *Baird Bros.*

*Sawmill v. Augusta Constr.*, 2000 Ohio App. LEXIS 2773, *2 (7th Dist. June 19, 2000).

{¶ 19} The counties were not parties to the action, and the trial court did not enter a judgment against the counties or the treasurers; thus, personal jurisdiction was not implicated here. Therefore, Geauga County's fifth assignment of error is overruled and Portage County's third assignment of error is overruled.

{¶ 20} Subject-matter jurisdiction goes to the power of a court to hear and decide the merits of a case. *Mayfield Hts. v. N.K.*, 2010-Ohio-909, ¶ 19 (8th Dist.). It does not relate "to the rights of the parties, but to the power of the court." *State ex rel. Jones v. Suster*, 84 Ohio St.3d 70, 75 (1998). A judgment imposed by a court without subject-matter jurisdiction is void. *State v. Simpkins*, 2008-Ohio-1197, ¶ 12. We review the question of subject-matter jurisdiction de novo as well. *Yusuf v. Omar*, 2006-Ohio-6657, ¶ 7 (10th Dist.).

{¶ 21} In *Dir. of Transp. v. Eastlake Land Dev. Co.*, 2008-Ohio-3013 (8th Dist.), this court rejected an argument on appeal that, because the subject property was located in Lake County, Ohio, the Cuyahoga County Court of Common Pleas did not have subject-matter jurisdiction to allow a receiver to sell it. The court noted that "courts of common pleas are courts of general jurisdiction and have original jurisdiction in all civil suits where the sum or matter in dispute exceeds the exclusive original jurisdiction of county courts." *Id.* at ¶ 20, citing *State ex rel. Judson v. Spahr*, 33 Ohio St.3d 111, 113 (1987), citing R.C. 2305.01. Because the monetary amount in issue in *Eastlake Land Dev.* fell within the monetary

requirements for a common pleas court this court held that "the action [fell] within the broad jurisdictional grant of the common pleas court." *Eastlake Land Dev.* at ¶ 21.

{¶ 22} Further, Ohio's receivership statutes, R.C. 2735.01, et seq., do not contain jurisdictional restrictions on a court-appointed receiver's control over property subject to the receivership. Rather, the receivership statute broadly vests a receivership court with power to authorize a receiver to, among other things, under R.C. 2735.04(B)(2), 2735.04(B)(4) and 2735.04(B)(5), respectively, "[t]ake and keep possession of real or personal property[,] [e]nter into . . . contracts of sale[,]" and "[s]ell and make transfers of real or personal property[.]" The statute does not restrict a trial court's exercise of jurisdiction in a receivership over property outside of the county in which the court sits.

{¶ 23} For the above-stated reasons, Geauga and Portage Counties' claims of lack of subject-matter jurisdiction are without merit.

{¶ 24} We also find no merit to Portage County's argument that venue was improper. "Venue, as opposed to jurisdiction, relates to where a cause can be tried . . . ." *Eastlake Land Dev.*, 2008-Ohio-3013, at ¶ 22 (8th Dist.). "No order, judgment, or decree shall be void or subject to collateral attack solely on the ground that there was improper venue[.]" Civ.R. 3(H). Portage County did not raise the issue of venue in the trial court and therefore has waived the issue on appeal. *See Eastlake Land Dev.* at ¶ 23.

{¶ 25} Geauga County's fourth assignment of error and Portage County's second assignment of error are overruled.

**Standard of Review as to Remaining Assignments of Error**

{¶ 26} The parties to this appeal disagree on our standard of review as to the substantive issues raised in the appeal: the counties contend our review is de novo, while NEO contends our review is for an abuse of discretion. We agree with NEO. "Receivership proceedings are equitable in nature subject to appellate review for an abuse of discretion." *Jezerinac v. Dioun*, 2020-Ohio-587, ¶ 28 (10th Dist.) However, our judgment would be the same regardless of whether we review for an abuse of discretion or de novo.

**Notice and Due Process**

{¶ 27} All three counties contend that they did not receive statutory notice of the sale of the pipeline under R.C. 2735.04(D)(2) and that the lack of notice violated their due-process rights. NEO, on the other hand, contends that the notice the counties received via the disbursement motion and the bankruptcy proceeding afforded them actual notice of the receiver's authority and plan to sell the pipeline. The counties rely in part on this court's decision in *Eastlake Land Dev.*, 2008-Ohio-3013 (8th Dist.), in support of their position. We find that *Eastlake Land Dev.* does not help the counties.

{¶ 28} *Eastlake Land Dev.* involved two parcels of vacant industrial real estate in Lake County, Ohio; the parcels were owned by Eastlake Land Development Co. The parcels were encumbered by, among other debts, three mortgages held by

American First Federal, Inc. ("AFF"). Eastlake Land Development was alleged to be insolvent, and the trial court appointed a receiver for its assets.

{¶ 29} AFF filed a foreclosure action in Lake County regarding the property. The foreclosure action was stayed pending the receivership proceedings, which the trial court allowed AFF to intervene in. At the time AFF intervened, the receiver had a pending request to sell the first parcel; AFF objected on the ground that the receiver's request did not have a provision to pay AFF its lien interest as a first lien holder. Over AFF's objection, the trial court granted the receiver's request and the receiver sold the first parcel.

{¶ 30} Thereafter, the receiver sought to sell the second parcel. The trial court set the matter for a hearing, but on the same day it set the hearing date, it also entered an order granting the receiver's request to sell the second parcel. The receiver sold the second parcel free and clear of AFF's liens. AFF appealed to this court, contending that the trial court erred in ordering that the second parcel could be sold free and clear of AFF's mortgage liens. AFF contended that neither the receiver nor the trial court gave it notice that its mortgage liens would be foreclosed by the receiver's sale of the property.

{¶ 31} The record reflected that the receiver never served AFF with a summons and complaint notifying AFF that he sought to extinguish its interests through the sale of the property. Rather, the receiver's motion sought an order permitting the receiver to negotiate the sale of the second parcel. The receiver did not seek authorization to sell the property free and clear of AFF's mortgage liens.

{¶ 32} One of the appellees' arguments in support of the trial court's order allowing the receiver to sell the property free and clear of AFF's liens was that the receiver was not required to provide notice to AFF because the receiver was merely exercising the power given to him by the court under his appointment as a receiver. This court framed the "threshold question" as follows: "[W]hether the trial court could authorize the receiver to take the action he took, i.e., sell the second parcel free and clear of AFF's liens even though AFF had not consented to same and had not received notice that the property would be sold free of its lien." *Eastlake Land Dev.*, 2008-Ohio-3013, at ¶ 29 (8th Dist.). The court answered no, finding that "[t]he trial court's order authorizing the receiver to do so effectively resulted in a denial of AFF's due-process rights and, accordingly, was erroneous as a matter of law." *Id.* at ¶ 31. The *Eastlake Land Dev.* Court did not consider whether the trial court erred by not requiring AFF to follow the statutory procedures for a receiver's sale of real property, deeming the issue moot in light of its due-process finding.

{¶ 33} *Eastlake Land Dev.* is distinguishable from this case. *Eastlake Land Dev.* concerned real property while this case concerns personal property — as will be discussed in more detail below, we reject the counties' contention that the pipeline can be characterized as real property. Further, AFF was a party to the receivership proceedings, while the counties were not parties to the within receivership proceedings.

{¶ 34} Moreover, *Eastlake Land Dev.* was decided in 2008. In 2015, Ohio's receivership statute regarding the sale of land was amended by 2013 Am.Sub.H.B.

No. 9. Under amended R.C. 2735.04(D), the legislature carved out a notice requirement for a receiver's sale of real property; the amended statute does not state that there is a notice requirement for personal property. *See* R.C. 2735.04(D)(2).

{¶ 35} The primary goal of statutory construction is to give effect to the General Assembly's intent in enacting the statute. *State v. Banks*, 2011-Ohio-4252, ¶ 13 (10th Dist.), citing *State v. Hairston*, 2004-Ohio-969, ¶ 11. To determine legislative intent, we first look to the language of the statute. *Hubbell v. Xenia*, 2007-Ohio-4839, ¶ 11, citing *State ex rel. Burrows v. Indus. Comm.*, 78 Ohio St.3d 78, 81 (1997). We consider the statutory language in context, construing words and phrases according to the rules of grammar and common usage. *Bartchy v. State Bd. of Edn.*, 2008-Ohio-4826, ¶ 16, citing *State ex rel. Stoll v. Logan Cty. Bd. of Elections*, 2008-Ohio-333, ¶ 34.

{¶ 36} Courts lack authority to ignore the plain and unambiguous language of a statute under the guise of statutory interpretation or liberal or narrow constructions. *State ex rel. Massie v. Bd. of Edn.*, 76 Ohio St.3d 584, 588 (1996). Rather, a court's duty is to give effect to the words used in a statute, not to delete or insert words. *State v. Maxwell*, 2002-Ohio-2121, ¶ 10. If the words in a statute are "'free from ambiguity and doubt, and express plainly, clearly and distinctly, the sense of the law-making body, there is no occasion to resort to other means of interpretation.'" *Hairston* at ¶ 12, quoting *Slingluff v. Weaver*, 66 Ohio St. 621 (1902), paragraph two of the syllabus. In short, "[a]n unambiguous statute is to be

applied, not interpreted." *Sears v. Weimer*, 143 Ohio St. 312 (1944), paragraph five of the syllabus.

{¶ 37} Had the legislature intended for notice requirements to apply to a receiver's sale of personal property, it would have stated so. R.C. 2735.04 is unambiguous and we are required to apply it as it is written.

{¶ 38} Geauga County's third assignment of error and Portage County's fourth assignment of error are overruled.

**Whether the Pipeline can be Characterized as Anything other than Personal Property; R.C. 323.11 and 323.47**

{¶ 39} Geauga and Lake Counties rely on a 1972 Ohio attorney general opinion, 1972 Ohio Atty. Gen. Ops. No. 72-086, for the proposition that the pipeline should be treated the same as real property. The opinion was relative to public utility railroad property and opined that "public utility tax delinquencies on railroad property (excluding rolling stock) should be treated as though they are from the real property tax duplicate and certified for foreclosure on the standard real property form; such delinquencies should not be handled as personal property tax delinquencies." *Id*. at 6.

{¶ 40} Initially, we note that opinions from the Ohio attorney general have no precedential effect and are not binding. *State ex rel. Van Dyke v. Pub. Emp. Retirement Bd*., 2003-Ohio-4123, ¶ 40. However, they are considered persuasive authority. *Id.* We are not persuaded by the opinion.

{¶ 41} The counties have not cited, and we have not found, any case law adopting the attorney general opinion. Further, there is no indication in the opinion that it applies to anything other than to railroads and the opinion does not opine that the railroad taxes are non-dischargeable. We further note that the counties themselves refer to the pipeline as personal property in their filings in the Geauga County foreclosure case. Even in this appeal, Geauga County's first, second, and fourth assignments of error refer to the pipeline as personal property.

{¶ 42} We are not persuaded by Portage County's contention that the pipeline can be characterized as a business fixture under R.C. 5701.03 and, therefore, regarded as real property for the purpose of taxation. Under the statute, *personal property* includes a business fixture. R.C. 5701.03(A). A business fixture is "an item of tangible *personal property* that has become permanently attached or affixed to the land . . . ." (Emphasis added.) R.C. 5701.03(B). Included as business fixtures are transmission and distribution systems, "whether above or below ground." *Id.* The pipeline is a distribution system and, therefore, personal property. *See, e.g., Columbia Gas of Ohio, Inc. v. Holloway*, 2023-Ohio-4257, ¶ 2 (3d Dist.) "Columbia Gas is a natural gas *distribution* company that operates a public utility subject to regulation by the State of Ohio." (Emphasis added.) At issue in *Columbia Gas* were easement rights in order to construct and operate an underground natural gas pipeline.

{¶ 43} We are also not persuaded by the counties' citation to R.C. 323.11 and 323.47 for the proposition that their liens on the pipeline continue regardless of the

receiver's sale. Both R.C. 323.11 and 323.47 relate to real property. Further, that R.C. 5727.06 describes that liens can attach to real and personal property, and R.C. 5727.23 describes how the taxes are levied and collected, does not make the pipeline personal property.

{¶ 44} Geauga County and Portage County's first assignments of error are overruled.

**Sale of the Pipeline Free and Clear of Tax Liens**

{¶ 45} The counties contend that their liens on the pipeline were not dischargeable; in other words, that the receiver could not sell the pipeline free and clear of their liens.

{¶ 46} In interpreting the powers of a receiver, the Supreme Court of Ohio has held that R.C. 2735.04 allows "the trial court to exercise its sound judicial discretion to limit or expand a receiver's powers as it deems appropriate." *State ex rel. Celebrezze v. Gibbs*, 60 Ohio St.3d 69, 74 (1991). Thus, it has been held that a trial court, pursuant to R.C. Ch. 2735, has the power to authorize a receiver, under certain circumstances, to sell property at a private sale free and clear of all liens and encumbrances. *Quill v. Troutman Ent., Inc.*, 2005-Ohio-2020, ¶ 34 (2d Dist.); *see also DeepRock Disposal Sols., LLC v. Forté Prods., LLC*, 2021-Ohio-1436, ¶ 120 (4th Dist.).

{¶ 47} This court has also addressed the issue, holding that

"a receiver may sell property free and clear of liens by private sale pursuant to a written contract between the receiver and the prospective purchaser, by private auction, by public auction, or by any other

method that the court determines is fair to the owner of the property and all other parties with an interest in the property, is reasonable under the circumstances, and will maximize the return from the property to the receivership estate, taking into account the potential cost of holding and operating the property."

*Cleveland Internatl. Fund Med. Mart v. Optima 777, LLC*, 2023-Ohio-715, ¶ 22, (8th Dist.), *appeal not accepted*, 2023-Ohio-2236, quoting R.C. 2735.04(D)(1)(a).

{¶ 48} Additionally, NEO's purchase agreement stated that NEO "shall not assume or be liable or bound by any . . . Lien." We are not persuaded by the counties' contention that the trial court's approval order exceeded the scope of NEO's purchase agreement. The trial court appended the purchase agreement as an exhibit to its approval order and referenced the agreement throughout the order. The purchase agreement specifically provided that NEO and OTP would "each be responsible for real and personal property Taxes . . . with respect to the Purchased Assets based strictly on which Party owns the Purchased Assets at the time of the relevant assessment date under the applicable Tax law." NEO purchased the pipeline in 2019; at that time, the counties' taxes had all been assessed.

{¶ 49} Thus, the trial court did not err in upholding the receiver's sale of the pipeline free and clear of the counties' liens. Geauga County's second assignment of error, Portage County's fifth assignment of error, and Lake County's sole assignment of error (which includes portions of arguments made by the other two counties in the counties' other assignments of error) are overruled.

{¶ 50} In sum, the property at issue in this case — the pipeline — was personal, not real, property. Under the prevailing law, the receiver was permitted

to sell it without notice to the counties and the sale extinguished the liens the counties had against the pipeline. Consequently, as the trial court held, the liens incurred by OTP remain the obligation of OTP and attach to real property owned by OTP. NEO is not responsible for them.

{¶ 51} All assignments of error asserted by Geauga, Portage, and Lake Counties are overruled.

{¶ 52} Judgment affirmed.

It is ordered that appellee recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHAEL JOHN RYAN, JUDGE

EILEEN T. GALLAGHER, P.J., and
MARY J. BOYLE, J., CONCUR